**Charlie Melvin PAGE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 13-00-035-CR, 13-00-042-CR.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

Aug. 29, 2002.

Rehearing Overruled Oct. 10, 2002.

Mark J. Kelly, Texas City, for Appellant.

Michael J. Guarino, Criminal District Attorney, Galveston, for Appellee.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and BAIRD.[1]

## OPINION

Opinion by Justice BAIRD (Assigned).

Appellant was charged in separate indictments with the offenses of sexual assault and impersonating a peace officer. The cases were combined into a single trial where a jury convicted appellant of both offenses and assessed punishment at seven years and five years confinement in the Texas Department of Criminal Justice, Institutional Division, respectively. We reverse.

### I. Factual Summary.

Appellant's sole point of error contends the trial judge erred in admitting extraneous offense evidence. To fully address this issue we set forth the evidence with considerable detail in the order presented at trial.

---

1. Former Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

## A. The State's Case In Chief.

### i. Testimony Related to the Charged Offenses.

In 1997, the complainant was working as a prostitute in Galveston. One winter night, as she walked to a Jack in the Box restaurant, a maroon four-door car pulled up. The complainant testified the driver was "a white man, had blond hair parted on the side, and he had a baby face and wasn't muscular. He was kind of chunky." The complainant made an in-court identification of appellant as the driver.

Appellant beckoned the complainant, and when she approached, appellant flashed a badge, said he was a police officer and instructed the complainant to get into the vehicle. The complainant complied, appellant placed the badge above the sun visor, and the two drove away. She believed appellant was a plain clothes detective because he was not in uniform. Appellant stopped the vehicle, got a police radio from the trunk, and placed it in the back seat. Appellant returned to the vehicle, and began driving again; the complainant heard voices from a police radio. Appellant said it was almost time for shift change, and he did not want to take the complainant to jail because of the paperwork. The clock on the dashboard showed 7:50 p.m.

Appellant stopped a second time and told the complainant she would have to perform oral sex on appellant or go to jail. Appellant pulled the complainant's head to his exposed penis. The complainant performed oral sex on appellant for approximately thirty seconds, stopped, said she would not continue, and appellant could take her to jail if he wished. Appellant started his vehicle, returned to the area where he met the complainant, let her out of the vehicle with the instructions that she stay off the streets or be arrested by appellant's partners whom he had notified of the complainant. The complainant exited the vehicle, walked behind the car and memorized the license plate number. The complainant also testified that she related this event to a man named Henry. She knew nothing more of this individual other than he lived on the streets and had gone to jail. She also told John Savoy of this incident.

The complainant saw appellant the next day in the same car bearing the same license plates. The following day, she reported the incident to Officer Brian Gately, a patrolman with the Galveston Police Department. The complainant gave a written statement describing the incident. She was later shown a photographic lineup of six white males by Sergeant Richard Kershaw, and warned to not select anyone unless she was certain. The complainant positively identified appellant as the person who identified himself as a peace officer, and who forced her to have oral sex.

On cross-examination, the complainant admitted that at the time of the alleged offenses she was addicted to crack cocaine, and used the proceeds from prostitution to afford her addiction. She admitted being in trouble with the law in the past, but had since rid herself of the addiction to crack cocaine, had re-married and was living a stable life in another city. The complainant testified she did not make these allegations against appellant to avoid any criminal liability or punishment.

Regarding the alleged offenses, the complainant testified she had not ingested cocaine within the last twenty-four hours because she had an appetite, and was walking to the Jack in the Box for a meal.[2] The complainant testified appellant flashed a badge and told her to get in the car.

---

2. When consuming cocaine the complainant did not have an appetite.

She testified the badge was in "like a wallet flip thing." That she heard policemen talking on appellant's radio in the back seat. The complainant testified that she walked behind appellant's car and "got the license plate number" from the vehicle which was stopped at a stop sign. She walked to Henry's apartment and wrote down the license plate number on a piece of paper, and memorized the number. She was unsure if Henry saw appellant's car and described Henry as "just another crack head." She also testified that she did not mention Henry to either Gately or Kershaw. The complainant testified she did not immediately report the incident "because I thought he was a real police officer and I deserved what he had done." She explained: "I just felt like at that point in time where my life was that I had deserved what happened to me." The complainant decided to confide in Gately after seeing appellant the second time because she felt appellant was stalking her. She repeatedly stated that she knew the time of this incident because she saw the clock on the dashboard which displayed 7:50 p.m. She was later impeached with her statement wherein she said the time was 6:50 p.m.

Near the conclusion of this cross-examination, the following exchange occurred:

DEFENSE COUNSEL: You described the man as a 200 pound man. You realize this gentleman sitting here next to you is, like, 265 pounds?

A. No, sir.

Q. Did the gentleman that was in that car, was he substantially lighter than this gentleman sitting here? If this is the man that you're alleging did this to you, if this is him, has he put on 65 pounds?

A. I don't know, sir.

Q. You would agree with me that's a substantial difference?

A. Yes, sir.

Q. Is 200 pounds a fair weight for what the man weighed?

A. If I looked at him now, I would say I thought he weighed 200 pounds.

Q. You realize [the prosecutor] is closer to 200 pounds than I am and he's probably substantially more than I am?

A. No, sir. I don't know that.

Finally, the complainant testified regarding the photo spread that she was not told by Kershaw who to select, or that the person suspected of committing these offenses was in the spread.

Brian Gately was employed as a police officer for the City of Galveston, and assigned to patrol the area where complainant worked as a prostitute. On December 20, 1997, the complainant approached Gately and stated she had been forced to have sex with a man who identified himself as a peace officer. The complainant described the badge, the type of sex she was forced to perform, where the event took place, that she overhead a conversation on a police radio, and gave Gately a piece of paper with the license plate number DLW 17T written on it.[3] Gately testified the vehi-

---

**3.** Gately was permitted to relate the information received from the complainant over appellant's hearsay objection. The State argued the testimony was not being offered for the truth of the matter asserted, but to show the complainant made the complaint. The State did not cite any authority for this proposition. Apparently the State was relying upon that body of law which permits police officers to

explain how the defendant became a suspect. *Dinkins v. State,* 894 S.W.2d 330, 347–48 (Tex.Crim.App.1995). However, the Court of Criminal Appeals has recognized that rule of evidence had led to confusion which has resulted in "widespread abuse." *Schaffer v. State,* 777 S.W.2d 111, 114 n. 3 (Tex.Crim. App.1989). The *Schaffer* Court attempted to eliminate this confusion by holding peace offi-

cle bearing that license plate number was registered to appellant, and the registration provided appellant's address. Gately notified his supervisor which is the protocol when a complaint is made against a police officer. Gately transported the complainant to the police station where she made a statement.

The third witness, Sergeant Richard Kershaw of the Criminal Investigation Division of the Galveston Police Department read the report prepared by Gately and spoke to the complainant, Kershaw went to appellant's place of employment, the Texas City unit of the Department of Criminal Justice, Institutional Division. In the employees' parking lot, Kershaw saw a four-door, maroon Chevrolet bearing the license plate number the complainant had given Gately. As appellant approached, Kershaw noted how "extremely accurate" appellant's appearance was to the description given by the complainant.

Kershaw identified himself and said he was investigating a report from a prostitute who stated she had been forced to have sex with a man who identified himself as a police officer. Appellant admitted owning the vehicle, and stated no one had borrowed it. Appellant denied having a badge, but stated that he had a police scanner which he retrieved from underneath the front seat. Appellant agreed to meet Kershaw the following morning at the police station.[4] At that meeting, appellant denied participating in the events described by the complainant. When shown a photograph of the complainant, appellant denied having ever seen her.

Kershaw took a photograph of appellant, and placed it in a lineup which he showed to the complainant. After explaining to the complainant the procedure, the complainant identified appellant.[5] Kershaw obtained search warrants for appellant's automobile and apartment authorizing seizure of the scanner and badge. Kershaw executed those warrants and seized the scanner from appellant's car. Appellant was then transported to his apartment where he gave Kershaw a black wallet with a badge attached.

On cross-examination, Kershaw testified he was not aware of any charges pending

cers should be allowed some latitude to explain their presence at the scene or their conduct during the investigation. *Id.* at 114. But the *Schaffer* Court specifically held an officer "should not be permitted to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports on grounds that she was entitled to tell the jury the information upon which she acted." *Id.* at 115. The *Schaffer* Court ultimately held the complained of testimony was, in fact, hearsay. *Id.* The same is true in the instant case. Although not dispositive of the issue presented in this appeal, we offer this footnote in the event of a retrial.

4. Kershaw testified that appellant appeared with retained counsel at this meeting. There was no objection to this line of questioning. Article 38.38 of the Code of Criminal Procedure provides:

Evidence that a person has contacted or retained an attorney is not admissible on the issue of whether the person committed a criminal offense. *In a criminal case, neither the judge nor the attorney representing the state may comment on the fact that the defendant has contacted or retained an attorney in the case.* (Emphasis added) TEX.CODE CRIM. PROC. ANN. art. 38.38 (Vernon Supp.2002).

5. Specifically, Kershaw read the following instructions:

You will be asked to look at a group of photographs. The fact that the photographs are shown to you should not influence your judgment. You should not conclude or guess that the photographs contain the picture of the person who committed the crime. You are not obligated to identify anyone. It is just as important to free innocent persons from suspicion as to identify guilty parties. Please do not discuss the case with other witnesses nor indicate in any way that you have identified someone.

against the complainant at the time of his investigation of the instant case(s). And Kershaw also stated he never received a piece of paper with a license plate number written on it.

The fourth witness was Gerald Larsen of the Internal Affairs Division of the Texas Department of Criminal Justice. Larsen testified appellant was a Correctional Officer III. In that capacity, appellant was not a licensed peace officer in the State of Texas. Larsen testified that corrections officers did not use badges for identification purposes. Furthermore, there was no reason for appellant to carry a badge to discharge his duties as a corrections officer. Larsen confirmed appellant's initial denial to Kershaw of having any type of badge.

### ii. Extraneous Offense Evidence and Objections.

At the conclusion of the testimony of these four witnesses, the State sought permission to introduce evidence of two extraneous offenses. The prosecutor argued this evidence was admissible "because our only identification witness in this case, [the complainant], has been impeached by the Defense attorney."[6] The trial judge agreed to hear this evidence outside the presence of the jury.

Erica Cavender testified that in the Spring of 1997, she was working as a prostitute when approached by appellant who was driving a maroon vehicle.[7] Appellant identified himself as a police officer, and asked Cavender to perform oral sex. Cavender heard a "police type radio" in the car. When Cavender asked how much money appellant was willing to pay he stated six or seven dollars. Cavender refused to perform the sex act for that amount, and walked away. Appellant left only to return, and have another conversation with Cavender. At this point, appellant said he would not arrest Cavender if she would go with appellant. Cavender said she would take her chances, and appellant left. Cavender identified appellant from the photo spread prepared by Kershaw. Cavender testified appellant never exhibited a badge.

Angelina Edenfield was also a prostitute in Galveston. Around Labor Day of 1997, she was approached by appellant in a maroon vehicle. Appellant asked Edenfield how much she would charge to perform oral sex. Edenfield asked appellant if he was a police officer and appellant answered "No." After the two fondled each other, Edenfield got into appellant's car and they drove to East Beach. Once there, appellant pulled out a badge from the sun visor, and said he was a Texas City police officer working a sting operation in Galveston. Appellant stated he would not arrest Edenfield if she performed sexual acts. Edenfield said either arrest me or pay me. Appellant became irate and struck Edenfield. At that point, Edenfield became fearful and performed both oral and vaginal intercourse on appellant. Appellant then returned Edenfield to the area where they met. Edenfield identified appellant from the photo spread prepared by Kershaw.

---

**6.** The prosecutor explained:
> One of the ways the Defense attorney has impeached her was by the weight description that she gave of the Defendant. She talked to the police. She said approximately 200 pounds; and [defense counsel] made it a point to point at the Defendant and say that, 'You're aware this man is 260 pounds' and made a very big issue in front of the jury about how far off she was on his weight.

**7.** It is the author's policy to not refer to complainants by name. However, because of the circumstances presented in this case that policy cannot be followed.

At the conclusion of this testimony, defense objected to the admission of this evidence under both Rules 404(b) and 403 of the Texas Rules of Evidence. He further argued that he had not made identification an issue.[8] The trial judge overruled the objections. Cavender and Edenfield then testified before the jury providing essentially the same information as set forth above.[9] The trial judge did not provide a limiting instruction regarding this testimony. At the conclusion of this testimony the State rested.

### B. Appellant's Case In Chief.

Defense counsel re-called Cavender who testified that although she was housed in the same area of the Galveston County jail, she and Edenfield had not discussed their testimony. Counsel also re-called the complainant who testified she had not violated the Rule of Sequestration, and did not remember whether she gave Kershaw the names of Cavender and Edenfield. The complainant stated that while working as a prostitute, she saw Cavender on a regular basis, but did not know Edenfield. At the conclusion of this testimony, appellant rested.

### C. Jury Instructions and Closing Arguments.

In the jury charge(s), the trial judge instructed the jury to limit their consider-

ation of the testimony of Cavender and Edenfield to the issue of identity. During closing arguments, both the prosecutor and defense counsel referred to the extraneous offense testimony. The jury returned guilty verdicts in each case.

### II. Admissibility of Extraneous Offense Evidence.

Trial counsel's specific and timely objections on the basis or Rules 404(b) and 403 of the Texas Rules of Evidence preserved this issue for our review. For the following reasons, we need only address the Rule 404(b) argument.

### A. Rule 404(b) Generally.

 Perhaps no rule of law is more firmly recognized in criminal jurisprudence than that the accused may be tried *only* for the offense charged, and not for some collateral crime or for being a criminal generally. This fundamental tenet is incorporated into our law at Rule 404(b) of the Texas Rules of Evidence which prohibits extraneous offense evidence from being offered to prove character conformity. However, such evidence may be admissible if it has relevance apart from character conformity. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App.1990) (op. on reh'g). Extraneous offense evidence

**8.** Specifically, counsel stated:

I think there is little doubt that the 12 jurors-I mean, because of the badge, the car, the license plate and the baby face and the chunkiness of the man, there's no doubt that these people here believe that this is the person [the complainant's] talking about.... I mean there's no doubt-that jury has no doubt that these two people-something went on between them because she nails him to a 'T.' ... Your Honor, ... just to make a suggestion to the Court. If we are concerned here about an identification argument, put me under a directive from the Court not to argue identity; therefore, if

I do, we have a problem. I have no intentions of arguing identity. Never have. This isn't an identification case. Never has been. If that's the concern, we're never going to make that argument.

**9.** For the purposes of this opinion, we consider only the evidence adduced at the hearing outside the jury's presence because the trial judge's ruling was based on that evidence rather than the evidence introduced later before the jury. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim.App.1996); *Hardesty v. State*, 667 S.W.2d 130, 135 n. 6 (Tex.Crim. App.1984).

has relevance apart from character conformity in three limited circumstances: where the evidence is relevant to (1) an elemental fact such as identity or intent; (2) an evidentiary fact such as motive or opportunity that inferentially leads to an elemental fact; or (3) defensive evidence such as accident or mistake that undermines an elemental fact. *Montgomery*, 810 S.W.2d at 387–88. We review the decision to admit such evidence under an abuse of discretion standard of appellate review. *Id.* at 391. In this context, if the trial court's ruling was within the zone of reasonable disagreement the appellate court will not intercede. *Id.*

■ As a threshold matter, before extraneous offense evidence may be admitted for any of the three reasons set forth above, there must be a dispute as to an elemental or evidentiary fact. *Webb v. State*, 36 S.W.3d 164, 181 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Without a dispute the extraneous offense evidence has no relevance apart from the defendant's character and is, therefore, inadmissible. *Id.* For example, identity is an elemental fact in every criminal case. However, simply because identity is an essential element in every case, it does not necessarily follow that identity is *at issue* or *in dispute* in each case to the extent that extraneous offense evidence is admissible. *Lane v. State*, 933 S.W.2d 504, 519 (Tex.Crim.App.1996) ("An extraneous offense may be admissible to show identity *only when* identity is an issue in the case."). To hold otherwise would totally eviscerate rule 404(b) and the policies underlying the prohibition against the admission of such evidence.

■ Moreover, it is rare that extraneous offense evidence will be admissible during the presentation of the State's case in chief; normally the dispute as to an elemental fact or evidentiary fact does not

arise unless and until the defendant presents a case in chief. *Reyes v. State*, 69 S.W.3d 725, 737 (Tex.App.-Corpus Christi 2002, pet. filed). However, identity may be placed *at issue* or *in dispute* through the cross-examination of the identifying witness. This occurs only when the identifying witness has been impeached about (1) a material detail of the identification; (2) the conditions surrounding the charged offense and the witness' identification of the defendant in that situation; or, (3) an earlier misidentification of the defendant. *Siqueiros v. State*, 685 S.W.2d 68, 71 (Tex. Crim.App.1985).

The State cited *Siqueiros* in the trial court to support its argument for admitting the extraneous evidence testimony of Cavender and Edenfield. Since the complainant's identification of appellant was not impeached because of the conditions surrounding the charged offenses and her identification of the defendant at that time, or because of an earlier misidentification of appellant, we must determine whether the complainant's testimony was impeached about a material detail of her identification of appellant. *Id.* The only possible impeachment was appellant's weight. That portion of the testimony is set out in full above. The issue therefore is twofold: was the complainant impeached; and, if so, was appellant's weight a "material detail" of the complainant's identification. *Id.*

## B. Was The Complainant Impeached?

■ On direct examination, the complainant provided the following description of the driver: "a white man, had blond hair parted on the side, and he had a baby face and wasn't muscular. He was kind of chunky." The subject of weight was not mentioned on direct examination but rather broached for the first time on cross-examination. Defense counsel first asked the complainant if she realized appellant

weighed 265 pounds, and the complainant answered, "No, sir." Next, defense counsel asked the complainant if appellant had put on sixty-five pounds since the alleged offenses, the complainant responded, "I don't know, sir." The complainant explained: "If I looked at him now, I would say I thought he weighed 200 pounds." Finally, when the complainant was asked whether she realized the prosecutor was closer to 200 pounds than defense counsel, the complainant stated: "No, sir. I don't know that."[10] This cross-examination simply does not rise to the level of impeachment.

Moreover, the effect of the questions propounded on cross-examination was inconsequential in relation to the overall strength of the State's case proving the elemental fact of identity. The complainant's identification of appellant was corroborated by both Gately and Kershaw. The complainant described to Gately the badge, overhearing a conversation on a police radio, and the license plate number of the vehicle, DLW 17T. Kershaw characterized the complainant's initial description of her assailant as "extremely accurate" in relation of appellant. Kershaw testified the complainant positively identified appellant from the photographic line-up. Moreover, Kershaw recovered a police scanner from appellant's vehicle bearing the licence plate number the complainant gave to Gately.[11] Finally, Kershaw seized a badge from appellant's residence.[12] Accordingly, we hold the elemental fact of identity was not *at issue* or *in dispute* because the complainant was not impeached on cross-examination regarding her identification of appellant.

Additionally, the facts of the instant case stand in stark contrast to those in *Siqueiros*. There the prosecutrix admitted on cross-examination, *inter alia:* (1) the conditions on the evening of the alleged offense were not conducive to an accurate identification (the lighting was bad, she could not see the dial on her digital clock beside her bed, and she had drunk three beers and smoked marihuana before going to bed); (2) not telling the scene officer that the assailant had a mustache (trial counsel then drew attention to the fact that the defendant had a mustache); (3) when she put together a composite drawing of her assailant, she told the detective she had difficulty recalling her assailant's face; (4) the composite drawing produced in that meeting did not resemble the defendant; (5) when she picked appellant's photo from a line-up, she told the officers that she "cannot be positive" of her identification; and (6) at a voice line-up she told an officer that her assailant's voice was familiar, but could not identify any of the voices as being the appellant's. *Siqueiros,* 685 S.W.2d at 69–70. Additionally, the non-identifying witnesses offered by the State did not corroborate the identification of the defendant but, instead, undermined it. Detective Beltran testified (1) the prosecutrix did not say her assailant had a mustache; (2) the prosecutrix said she could not be positive of her identification

---

**10.** We pause here to note that defense counsel conceded the identification of appellant in his cross-examination of the complainant when he asked: "How long did you talk to Mr. Page on the side of the road?" And the complainant responded: "Wasn't really much of a conversation.... It was him telling me, 'Hey, come here' and I walked over to the car and he flashed a badge, said, 'Get in. I'm the police.'"

**11.** Kershaw testified that appellant stated no one had borrowed the vehicle.

**12.** As noted above, the complainant described as being in "a wallet flip thing." Kershaw testified the badge was in a black wallet. Moreover, appellant denied having a badge to both Kershaw and Larsen.

of the defendant in the photo line-up (Beltran noted in his report that the prosecutrix's identification was tentative.); and (3) the prosecutrix failed to pick the appellant's voice from a voice line-up. Also, the treating physician testified the prosecutrix admitted consuming five or six beers on the night of the attack. *Id.* Accordingly, we hold *Siqueiros* does not support the trial judge's decision to admit the extraneous offense evidence in the instant case.

Because the complainant was not impeached on cross-examination regarding her identification of appellant, the trial judge abused his discretion in admitting the extraneous offense testimony of Cavender and Edenfield.

## C. *Material Detail* of Identification.

■ Assuming arguendo the complainant was impeached, we will determine whether that impeachment related to a *material detail* of her identification of appellant. Black's Law Dictionary defines "material" as "important." BLACK'S LAW DICTIONARY 747 (6th ed.1990); *see also* BALLENTINE'S LAW DICTIONARY 781 (3rd ed.1969) (defining "material" as "important"); WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 733 (9th ed.1988) ("material" defined as "having real importance or

great consequences"). Unless specifically asked or weighed, a person's weight is a matter of estimation or guesswork. The accuracy of such an estimate or guess is dependent upon the ability to view the dimensions and size of the full body, whether the individual was naked or clothed and, if clothed, the type of clothing being worn.

In the instant case, appellant was seated in a vehicle at the time(s) the complainant formed her identification. Under these circumstances, the complainant's report of appellant's weight would be nothing more than an unimportant guess of no probative value. This lack of importance is underscored in light of her accurate description of appellant by race, the color of his hair and how it was parted, facial features, and build.

Accordingly, we hold that even if the complainant had been impeached, the impeachment was not related to a "material detail" of her identification of appellant because appellant's weight was unimportant in relation to the other details of the complainant's description. Therefore, for this alternative reason, we hold the trial judge abused his discretion in admitting the extraneous evidence testimony of Cavender and Edenfield.[13]

---

**13.** In the trial court, the State also argued the extraneous offense evidence of Cavender and Edenfield was admissible because defense counsel (1) questioned the complainant about her drug use, and (2) attempted to show Kershaw used a tainted photo spread. We need not address these arguments in the body of this opinion because they were not advanced by the State in its brief. And even if briefed, such arguments have been held to be meritless. The complainant's testimony about drug use cannot serve as a basis for the admission of extraneous offense evidence because such evidence cannot serve to rehabilitate the credibility of a complaining witness. *Pavlacka v. State*, 892 S.W.2d 897, 903 (Tex.Crim.App. 1994). This is so because the rehabilitative value of the evidence would derive solely from

the impermissible inference that the defendant acted in conformity with his character. *Webb v. State*, 36 S.W.3d 164, 181 n. 9 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd) (specifically rejecting argument that cross-examination challenging the complaining witness's credibility or recall provides basis for admission of extraneous offense evidence). Additionally, the extraneous offense evidence was not admissible in relation to Kershaw because he was not an identifying witness. In this context, an identifying witness is one who was present at the scene and personally identified the accused. *Siqueiros*, 685 S.W.2d at 69 (Prosecutrix was the State's only "identifying witness."). The State admitted as much in the trial court by describing the complain-

## III. Harm Analysis.

As a general rule, Rule 44.2(b) of the Texas Rules of Appellate Procedure prescribes the harm analysis for error stemming from the erroneous admission of extraneous offense evidence. TEX.R.APP. P. 44.2(b); *Reyes,* 69 S.W.3d at 742. Under that rule, error that does not affect a substantial right must be disregarded. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997) (citing *Kotteakos v. U.S.,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). An error that has no influence or only a slight influence on the verdict is harmless. *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998). However, if the reviewing court is unsure whether the error affected the outcome, the court should treat the error as harmful, i.e., as having a substantial and injurious effect or influence in determining the jury's verdict. *Webb,* 36 S.W.3d at 182. Neither party has the burden of proof under rule 44.2(b). *Id.* Rather, the appellate court will examine the record for purposes of determining harm. *Id.*

*Motilla v. State,* 78 S.W.3d 352 (Tex.Crim.App.2002), is the Court of Criminal Appeals' most recent pronouncement on how to conduct a harm analysis under Rule 44.2(b). Several factors are germane: (1) the evidence admitted, (2) the nature of the evidence supporting the verdict, including whether this evidence was overwhelming; (3) the character of the alleged error and how it might be considered in connection with other evidence in the case; (4) the jury instructions; (5) the State's theory and any defensive theories; (6) closing arguments; (7) voir dire; and, (8) whether the State emphasized the er-

ror. *Id.,* 78 S.W.3d at 354–57. We will consider each of these factors in connection with the instant case.

The evidence admitted before the jury is recounted in Part I, *supra.* Regarding the nature and character of the evidence, we are mindful that the Court of Criminal Appeals has "consistently acknowledged that the introduction of extraneous offenses to the jury is inherently prejudicial, and hence, harms the defendant, because it requires the defendant to defend against not only the offense charged but also his uncharged actions. The admission of extraneous offenses also prejudices the defendant because of the jury's natural inclination to infer guilt to the charged offense from the extraneous offenses." *Abdnor v. State,* 871 S.W.2d 726, 738 (Tex.Crim.App.1994) (internal citations and quotation marks deleted). Further, the prejudicial effect is greater from the admission of criminal extraneous conduct rather than noncriminal conduct. *Plante v. State,* 692 S.W.2d 487, 490 n. 3 (Tex.Crim.App.1985). Finally, we know from established precedent that evidence of sexually related misconduct is not only prejudicial but inherently inflammatory. *Bishop v. State,* 869 S.W.2d 342, 346 (Tex. Crim.App.1993).

The harm in the present case is compounded because the error lead to the admission of not one but two separate and distinct extraneous offenses, involving two different victims. Moreover, neither Cavender's nor Edenfield's testimony contains a single word about appellant's weight. The absence of any testimony related to the sole basis for admitting the extraneous offense evidence militates toward a conclusion that the evidence was considered for an improper purpose. *See* n. 6, *supra.* Additionally, we recognize

ant as "our only identification witness in this case." *See* part I, A, ii, *supra.*

that in cases, such as this, where there is little or no controverting evidence offered by the defendant, the use of an extraneous offense is unnecessary and possesses virtually no probative value. *Robinson v. State*, 701 S.W.2d 895, 898–99 (Tex.Crim. App.1985) (*citing Prior v. State*, 647 S.W.2d 956, 959 (Tex.Crim.App.1983)).

Further, we hold the evidence of guilt was far from overwhelming. While the license plate number, scanner and badge established a relationship between the complainant and appellant, the extent of that relationship was far from settled.[14] The ultimate issue was whether appellant impersonated a peace officer in an effort to obtain sexual gratification from the complainant. Resolution of this issue depended upon the credibility of the complainant. Accordingly, both the State and appellant spent a great deal of their time during voir dire on the issue of credibility, specifically the credibility of a prostitute, and one who abused drugs. While the jury was entitled to believe the complainant's testimony, in the context of this case, that testimony does not present overwhelming evidence of guilt.

Regarding jury instructions, the trial judge did not provide a limiting instruction before admitting the testimony of Cavender and Edenfield. Therefore, the testimony was before the jury not for the limited purpose of identification, but for all purposes. *Hammock v. State*, 46 S.W.3d 889, 895 (Tex.Crim.App.2001). It necessarily follows that by the time the jury was instructed on the limited purpose for which the evidence was admitted that instruction was ineffacious because "[w]here the jurors have been accumulating their impres-

sions of the evidence over the course of the trial, it is impossible for them to go back at the close of the trial and reassess the evidence in light of the limiting instruction." *Rankin v. State*, 974 S.W.2d 707, 712 (Tex.Crim.App.1996) (Limiting instructions given for the first time during the jury charge are not effective due to possibility evidence will be used for impermissible purpose). Therefore, the limiting instruction provided in the jury charge does not militate in favor of finding the error harmless.

We next consider the factors of closing argument and whether the State emphasized the error. The State repeatedly referred to the testimony of Cavender and Edenfield during it closing arguments; to our count, the prosecutor mentioned the erroneously admitted testimony seven times. The State argued the case boiled down to the testimony of the complainant, and then asked the jury to use the testimony of Cavender and Edenfield to corroborate the complainant's identity of appellant "as being the one who represented himself as a peace officer and forced her to perform oral sex on him." At another point, the prosecutor referred to the complainant, Cavender and Edenfield to describe appellant as a predator. Although the prosecutor frequently mentioned identity, the references to the testimony of Cavender and Edenfield were, in reality, improper attempts to bolster the credibility of the complainant, and encouraged the jury to convict because appellant's conduct in the charged case(s) was in conformity of his character of mistreating prostitutes.

For these reasons, we hold the error admitting the extraneous offense evidence

---

**14.** The bare fact that a relationship between the complainant and appellant existed has no probative force. The complainant had a relationship with Officer Gately, but not of a sexual nature. And, when interviewed by Kershaw, appellant admitted having a consensual sexual relationship with another female who he picked up and took to the movies.

in the testimony of Cavender and Edenfield had a substantial and injurious effect or influence on the jury's verdict. Consequently, we hold a substantial right was affected and, therefore, the error cannot be disregarded. TEX.R.APP. P. 44.2(b).

Having found the trial judge erred in admitting the extraneous offense evidence, and that said error affected the substantial rights of appellant, we reverse the judgment of the trial court in cause numbers 98CR0911 and 98CR0913 and remand for further proceedings consistent with this opinion.[15]

**15.** Having found the trial judge erred in admitting the extraneous evidence testimony of Cavender and Edenfield over appellant's timely Rule 404(b) objection, we do not address appellant's Rule 403 arguments.