NUMBER 13-00-164 -CR



COURT OF APPEALS




THIRTEENTH DISTRICT OF TEXAS




CORPUS CHRISTI - EDINBURG





 PEDRO SALAZAR , Appellant, 



v.




THE STATE OF TEXAS , Appellee.






On appeal from the 195th District Court 

of Dallas County, Texas.


 




O P I N I O N



Before Justices Hinojosa, Rodriguez, and Baird (1)


Opinion by Justice Baird




 Appellant was charged by indictment with the offense of capital murder. A jury convicted appellant of the lesser included
offense of murder. The jury assessed punishment at thirty-five years confinement in the Texas Department of Criminal
Justice-Institutional Division and a fine of $10,000. On direct appeal, we affirmed the judgment of the trial court. Salazar
v. State, No. 13-00-164-CR, 2001 Tex. App. LEXIS 6809 (Corpus Christi Oct. 4, 2001) (not designated for publication). 
However, the Texas Court of Criminal Appeals reversed our judgment, and remanded the case to us for a harm analysis. 
Salazar v. State, 90 S.W.3d 330 (Tex. Crim. App. 2002). The judgment of the trial court is affirmed in part and reversed
and remanded in part.I. Procedural History.

 The facts of the instant offense are adequately described in the opinion of the Texas Court of Criminal Appeals and need
not be repeated here. See id.  However, a summary of the procedural history is necessary to place our role on remand in
perspective.

 Appellant was convicted by a jury of the murder of Jonathon Bishop. (2) During the punishment phase of the trial, the trial
judge admitted into evidence a seventeen minute videotape described by the court of criminal appeals as "an extraordinarily
moving tribute to Jonathon Bishop's life." Id. at 333. The exhibit contained approximately 140 still photographs arranged
in a chronological montage accompanied by music including "Storms in Africa" and "River" by Enya, and concluded with
Celine Dion singing, "My Heart Will Go On," from the movie Titanic. Id. The jury assessed punishment at thirty-five
years confinement and a fine of $10,000.

 On direct appeal, this Court held the video's montage was admissible victim impact evidence, but held the trial judge erred
in admitting the audio portion of the videotape, and ultimately concluded the error was harmless. Id. at 334. The court of
criminal appeals granted review, and reversed our judgment because we erred in holding the videotape's probative value
was not substantially outweighed by unfair prejudice under rule 403 of the Texas Rules of Evidence. Id. at 332. The case
was then remanded to this Court to apply a rule 44.2(b) harm analysis to both the visual and audio portions of the
videotape. Id. at 339. We now proceed with that analysis.

II. Harm Analysis.

 In Reyes v. State, 69 S.W.3d 725 (Tex. App.-Corpus Christi 2002, pet. ref'd), we stated:

 Under [rule 44.2(b)], error that does not affect a substantial right must be disregarded. A substantial right is violated when
the error had a substantial and injurious effect or influence in determining the jury's verdict. If the error had no influence or
only a slight influence on the verdict, it is harmless. However, if the reviewing court is unsure whether the error affected
the outcome, the court should treat the error as harmful, i.e., as having a substantial and injurious effect or influence in
determining the jury's verdict. Neither party has the burden of proof under rule 44.2(b). Rather, the appellate court will
examine the record for purposes of determining harm.



Id. at 744-45 (internal citations omitted). (3)



 When conducting a 44.2(b) harm analysis, the appellate court should consider everything in the record, including any
testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the
character of the alleged error and how it might be considered in connection with other evidence in the case. Siverand v.
State, 89 S.W.3d 216, 221 (Tex. App.-Corpus Christi 2002, no pet.) (internal citation omitted). Additionally, the reviewing
court may consider the jury instructions, the prosecution and defensive theories, voir dire, closing arguments, and whether
the State emphasized the error. Page v. State, 88 S.W.3d 755, 766 (Tex. App.-Corpus Christi 2002, pet. granted). These
lists are illustrative of the factors that may be considered and are not exhaustive.

 When we consider "everything in the record," we note the evidence adduced at the guilt phase of appellant's trial is set
forth in the opinion of the court of criminal appeals and need not be restated here. We recognize from this evidence that
the deceased was both a drug dealer and burglar who participated in drug transactions with David Powell. Appellant was a
16-year-old special-education student. (4) He and Danny Diaz were recruited by Powell to commit the instant offense, a
brutal crime where the deceased died after being beaten with baseball bats and choked.

 The deceased's mother testified as the first witness at the guilt phase of trial and authenticated a photograph of the
deceased as he appeared at the time of his death. Salazar, 90 S.W.3d at 338. At the punishment phase of the trial, both
parents testified, and "spoke briefly, but eloquently, of their love for Jonathon, his individuality, his childhood youth, his
love of life, and of their personal loss and grief." (5) Id. Additionally, the State introduced the school records of appellant. 
Id. at 334. These records showed appellant was often absent from school, and frequently engaged in disruptive behavior
when in attendance. For example, he once threw rocks at another student (no one was injured), and referred to a teacher as
a "bitch."

 Appellant called six witnesses, including his mother. (6) David Pretlov described appellant as a polite, respectful,
non-violent young man who "could go either way if he got with the wrong crowd." Jose Navarrette described appellant as a
respectful, "very good kid." Shirley Aguero testified appellant was a friend of her son and had visited in her home. Aguero
described appellant as a mannerly, normal teenager. Hugo Salinas stated appellant "was a young man always wanting to be
affirmed . . . in what he was doing. He seemed a little bit lost, but he was always looking to try to improve his life, wanting
a change." Sylvia Ramirez testified appellant was in her house on a daily basis, and often earned spending money by doing
odd-jobs around her home. She stated appellant was a special-education student who was mannerly and respectful. 
Ramirez testified that she felt safe in appellant's presence and that she trusted him. Appellant's mother testified about
appellant's life, that he was a good child who did not belong to any gangs, established his eligibility for community
supervision, and described appellant as generous. During their closing arguments both counsel referred to the videotape. (7) 
Defense counsel appeared overwhelmed at the power of that exhibit but nevertheless pleaded for the jury to "cut through
emotion" and to be objective in their decision. (8) When referring to the videotape, the State asked the jury to think about
the deceased and the fact that he was a good kid. (9)

 We next consider the nature of the evidence supporting the verdict. The evidence supporting the conviction is strong. 
Indeed, we found the evidence both legally and factually sufficient when challenged on direct appeal. However, the fact
that there was sufficient evidence to support the conviction does not necessarily imply that the nature of that evidence
necessarily merited a lengthy prison sentence. As noted above, while this was a brutal crime, appellant was a juvenile party
to the offense, and was eligible for community supervision. (10)

 We next consider the character of the alleged error and how it might be considered in connection with other evidence in
the case. To discuss this factor, we need look no further than the opinion of the court of criminal appeals where the
majority found the character of the videotape was "very prejudicial." Quoting the court: "[The] prejudicial effect [of the
videotape was] enormous because the implicit suggestion is that appellant murdered this angelic infant; he killed this
laughing, light-hearted child; he snuffed out the life of a first-grade soccer player and of the young boy hugging his blond
puppy dog. The danger of unconsciously misleading the jury [was] high." Id. at 337. The majority of the court also stated: 
"The memorial video . . . was very lengthy, highly emotional, and barely probative of the victim's life at the time of his
death." Id. at 338. When remarking on the background music, the court said: "[T]he Enya and Celine Dion background
music greatly amplifie[d] the prejudicial effect of the original error." Id. at 339. Even Judge Keller, a staunch proponent of
victim-impact evidence, recognized the photographic montage "was unduly prejudicial," that "the music was unnecessary,"
and that the videotape "was presented in a manner designed to have an unduly emotional impact." Id. at 340 (Keller, J.,
concurring). Additionally, regarding the music portion of the videotape, on direct appeal the State conceded that the music
was not relevant. On remand, the State again concedes the photographs were "accompanied by highly emotional and
moving background music."

 Finally, the State argues the error was harmless because the trial judge declared it to be harmless. (11) The State cites no
authority for this argument, and our independent research has not revealed any authority to support the State's position. The
reason there is no such authority is simple: the trial judge has no role in assessing harm. The trial judge is to determine
whether proffered evidence is admissible or not. This is a singular decision, not a dual inquiry. The trial judge has no
authority to admit evidence he believes isinadmissible, yet harmless. Rule 44.2(b) is a rule of appellate procedure. The
appellate rules govern procedure in appellate courts and before appellate judges. See Tex. R. App. P. 1.1. Therefore, the
determination of harm is exclusively the function of the appellate court when reviewing the effect of the error committed in
the trial court. Consequently, we hold that a trial judge's determination that an error was harmless is not a factor to be
considered by an appellate court when conducting a harm analysis under rule 44.2(b).

 After analyzing the relevant factors under rule 44.2(b), we cannot conclude the error had no influence or only a slight
influence on the verdict. Accordingly, we hold the error stemming from the erroneous admission of the videotape cannot
be disregarded, but must be considered harmful. Accordingly, the seventh point of error is sustained.

 The trial court's judgment of conviction is affirmed, but we vacate the sentence and remand this case to the trial court for a
new hearing on punishment in accordance with article 44.29(b) of the Texas Code of Criminal Procedure. Tex. Code Crim.
Proc. Ann. art. 44.29(b) (Vernon Supp. 2003).

 

 _______________________ 

 CHARLES F. BAIRD,

 Justice





Publish .

Tex. R. App. P. 47.3(b).

Opinion delivered and filed

this 9th day of October, 2003.

1. Former Texas Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief Justice of the
Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. It is the author's policy not to refer to the complainant by name. However, that policy need not be followed in the instant
case as the complainant's name was repeatedly mentioned in the published opinion of the Texas Court of Criminal Appeals.

3. In his brief, appellant incorrectly assumes he has "the burden of showing some substantial right has been affected." See
Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001) (noting that "the parties may assist by suggesting how the
appellant was harmed (or not), but it is the responsibility of the reviewing court to decide whether it is likely that the error
had some adverse effect on the proceedings . . .").

4. Appellant was certified to stand trial as an adult.

5. The State characterizes this testimony as "remarkable innocuous." We disagree, and accept the characterization of the
court of criminal appeals.

6. The court of criminal appeals only briefly mentioned this evidence, limiting its description of this testimony to a single
sentence: "The defense offered evidence that appellant was a "slow" special-education student who was easily influenced,
but much loved by his family." Salazar, 90 S.W.3d at 334.

7. We need not consider voir dire in this harm analysis because the videotape was not mentioned at that phase of the trial. 
In fact, the videotape was unknown to either defense counsel or the trial judge until offered into evidence. The State
circumvented the discovery order by offering the exhibit without prior disclosure, and the trial judge admitted the videotape
without viewing it beforehand. This conduct by the trial judge excused appellant from having to follow the normal
procedure of objecting before an exhibit is admitted. In the instant case, appellant's objection was timely even though made
after the videotape was played to the jury because it was made as soon as appellant had actually seen the contents of the
exhibit. Therefore, the court of criminal appeals declined to hold this issue was not preserved for appellate review, stating
defense counsel cannot be "faulted for failing to make an objection to evidence sight unseen." Salazar, 90 S.W.3d at 339
n.27 (citing Tex. R. Evid. 103(a)(1)).



 Additionally, we pause to note that the State was intent on using photographs to unfairly prejudice the jury. During the
guilt phase of the trial, the State offered forty-seven autopsy photographs. The trial judge admitted only eleven.

8. Specifically, defense counsel argued, "There are a lot of people maybe that after listening to this tape and watching this
tape in the - that was offered into evidence, would say, well, from this point on, the Jury, that's all they're going to consider
is the tape. You might as well just sit down or leave the room or leave the Courthouse, because that's the last thing they're
going to consider is that videotape from the family of Jonathan Bishop." 

9. Specifically, the State argued, "And you think about Jonathan Bishop, and obviously you've see through the
photographs, the family, he was a good kid." 

10. The jury charge authorized conviction upon a finding that appellant acted either alone or as a party. The jury charge at
the punishment phase did not mention the videotape.

11. When admitting the videotape, the trial judge stated: "The court does not believe that even if there were error in the
admission of the tape, that it would be harmful to the Defendant. I believe - the Court believes that if there was any error,
and it does not concede that there was, that it was harmless error." See Salazar, 90 S.W.3d at 334.