IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. 2191-02, 2192-02






CHARLIE MELVIN PAGE, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRTEENTH COURT OF APPEALS


GALVESTON COUNTY






 Keller, P.J., delivered the opinion of the Court in which MEYERS, PRICE,
WOMACK, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. JOHNSON,
J., concurred in the result.


O P I N I O N 



 At trial, evidence of extraneous offenses was admitted under Rule 404(b) (1) to show identity. The
question we confront today is whether identity was placed in issue by defense cross-examination regarding
a discrepancy between the defendant's actual weight and the description of the perpetrator's weight given
to the police by an eyewitness. We hold that cross-examination on this subject did place identity in issue,
and consequently, we reverse the Court of Appeals's decision.

I. BACKGROUND


A. Facts


 Shelly Simmons, a prostitute, was walking to a restaurant in downtown Galveston one night when
she was stopped by a man in a four-door maroon car. The man told her to "come here," and Simmons did
so. He flashed a badge, claimed to be a police officer, and told Simmons to get in the car. She complied. 
As they drove down the seawall toward the end of East Beach, Simmons cried because she thought she
was going to jail. At one point, the driver stopped the car, walked to the trunk, and returned with what
sounded like a police radio. As they proceeded to drive down the beach, he told Simmons that he did not
want to take her to jail because it was almost time for his shift change and he did not want to have to do
the paperwork. They stopped on the beach, and he told Simmons that she would have to perform oral sex
on him or go to jail. While she continued to cry, he pulled her head down to his lap and forced her to
perform oral sex on him. After a brief time, she refused to continue and said that he would just have to take
her to jail. He took Simmons back to town and let her out of the car. She took note of the license plate
number as the car left the scene. 

 Several days later, Simmons saw the same car and driver, and decided to report the incident to
the police. She described her assailant as "kind of chunky" and "not very muscular," with a baby face and
blond hair parted on the side. She also gave the police the maroon car's license plate number. The number
was traced to appellant and his Galveston address. Simmons identified appellant as her assailant from a
photo line-up and in open court.

 Evidence showed that appellant was not, in fact, a police officer but was a prison guard who had
not been issued a badge. Following a search of appellant's apartment and car, police recovered a badge
and a police scanner radio.

 During direct examination of Simmons at trial, the State did not question her about appellant's
specific weight. On cross-examination, however, the following exchange took place:

 [Defense Counsel]: You described the man as a 200-pound man. You realize this
gentleman sitting here next to you is, like 265 pounds?


 A: No, sir.


 Q: Did the gentleman that was in that car, was he substantially lighter than this gentleman
sitting here? If this is the man that you're alleging did this to you, if this is him, has he put
on 65 pounds?


 A: I don't know, sir.


 Q: You would agree with me that's a substantial difference?


 A: Yes, sir.


 Q: Is 200 pounds a fair weight for what the man weighed?


 A: If I look at him now, I would say I thought he weighed 200 pounds.


 Q: You realize [the prosecutor] is closer to 200 pounds than I am and he's probably
substantially more than I am?


 A: No, sir. I don't know that.


 In addition to calling the victim and law enforcement personnel to the stand, the State called two
other Galveston prostitutes, Erica Cavender and Angelina Edenfield, to testify about two extraneous
offenses committed by appellant. Outside the presence of the jury, Cavender testified that appellant came
up to her in a maroon sedan, said he was a police officer, asked for oral sex, and said he would not arrest
her for prostitution if she complied.

 Edenfield testified that appellant approached her in a maroon car and arranged to pay her to
perform sexual acts for him. After driving to East Beach, appellant identified himself as a police officer and
said he would not take her to jail, but refused to pay her. When she declined to act without pay, he hit her
and forced her to have intercourse and oral sex with him. 

 Appellant objected to the testimony of these two witnesses on the basis of Rules 404(b) and 403. 
The State argued that the evidence was admissible because Simmons' testimony had been impeached by
cross-examination about appellant's weight and about Simmons' drug use. The State also claimed that her
testimony was impeached by defense counsel's questions to Officer Kershaw suggesting that the photo line-up was tainted. Appellant argued that identity was not in question, claiming that Simmons "nail[ed] him to
a 'T'" and that the jury had no doubt something went on between them. The trial court ruled that the
testimony was admissible, telling defense counsel, "If you're not questioning identity, you sure could have
fooled me." 

 B. Court of Appeals opinion


 The Court of Appeals held that the trial court erred by admitting evidence of the extraneous
offenses. (2) The appellate court claimed that the only possible impeachment in the case was in regard to
appellant's weight. (3) The court concluded, however, that the cross-examination regarding weight did not
rise to the level of impeachment and the effect of the questioning was inconsequential in relation to the
overall strength of the State's case proving the elemental fact of identity. (4) The court pointed out that
Simmons positively identified appellant and that this identification was corroborated by the investigating
officers' discovery of the fake badge, the police scanner, and the maroon car with the license number
Simmons had recorded. (5) The Court of Appeals also concluded that the impeachment did not relate to a
material detail of her identification because appellant's weight was unimportant in relation to the other
details of the complainant's identification. (6) Consequently, the Court of Appeals held that identity was not
an issue in the case, and therefore, the evidence was inadmissible under Rule 404(b). (7)

II. ANALYSIS


 A trial court's Rule 404(b) ruling is reviewed under an abuse of discretion standard. (8) Rule 404(b)
prohibits the introduction of extraneous bad acts to show character conformity but permits the introduction
of such acts for other purposes, including proving identity. (9) For proof of identity to be a valid purpose, it
must be an issue in the case. (10) Identity can be raised by defense cross-examination, such as when the
identifying witness is impeached on a material detail of the identification. (11) We have held that the existence
of a mustache can qualify as a material detail of identification. (12) 

 Here, defense counsel's cross-examination of the victim suggested that his 265 pound client was
not her 200 pound assailant. Whether the challenge was to her capacity to observe (i.e., she was mistaken)
or her truthfulness (i.e., she was lying), or both, the questions implied that the identification of appellant was
not trustworthy. (13) The question of whether defense counsel's cross- examination of the victim raised the
issue of identity may best be answered with another question: If it was not about identity, what was it
about? Defense counsel did not offer the trial court an alternative explanation for his line of questioning,
and none is apparent. Counsel simply denied making identity an issue.

 The Court of Appeals has also read too much into our past pronouncements regarding
impeachment relating to a "material detail" of identification. By "material," we have simply meant that the
detail must be relevant to the reliability of the identification. In minimizing the impact of the weight
discrepancy and in pointing to the strength of the State's other evidence, the Court of Appeals has confused
the relevance of the evidence with its strength. That the impeachment was not particularly damaging or
effective in light of all the evidence presented is not the question. The question is whether impeachment
occurred that raised the issue of identity. If so, Rule 404(b) permits the introduction of extraneous offenses
that are relevant to the issue of identity. (14)

 We reverse the judgment of the Court of Appeals, and remand the case for further proceedings
consistent with this opinion. 

 KELLER, Presiding Judge

Date delivered: June 9, 2004

Publish

 

1. All references to the Rules are to the Texas Rules of Evidence.
2. Page v. State, 88 S.W.3d 755 (Tex. App. - Corpus Christi, 2003).
3. Id. at 763.
4. Id. at 764.
5. Id.
6. Id. at 765.
7. Id. The Court of Appeals did not address appellant's Rule 403 arguments. Id. at 768 n. 15.
8. Lane v. State, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996)(citing Montgomery v. State,
810 S.W.2d 372 (Tex. Crim. App. 1991)).
9. Rule 404(b) provides in relevant part:


Evidence of other crimes, wrongs or acts is not admissible to prove the character of a
person in order to show action in conformity therewith. It may, however, be admissible
for other purposes, such as proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident....


See also Moses v. State, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003)(citing Montgomery).
10. Lane, 933 S.W.2d at 519.
11. Id.; Siqueiros v. State, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985); see also Robbins v.
State, 88 S.W.3d 256, 261 (Tex. Crim. App. 2002)(vigorous cross-examination can, by itself, place in
issue a non-conformity purpose under Rule 404(b)).
12. Siqueiros, 685 S.W.2d at 71.
13. Defense counsel also cross-examined the complainant on whether she used cocaine the day
she picked appellant out of the photo lineup and whether she thought being a victim would assist her
with her pending criminal problems. Counsel pointed out discrepancies between her written statement
and her testimony regarding the length of time she was in the car with her assailant and whether she
lived on the streets or at the Salvation Army. He questioned the fact that she said she reported the
incident immediately to a person named "Henry" but she did not ask the police to find him to
corroborate her statement. And counsel questioned the fact that she did not report the offense to the
police until days after Simmons said it occurred. Defense counsel's questions to Officer Kershaw also
suggested that the photo line-up was tainted. We need not, at this juncture, determine whether any of
these additional questions also raised the issue of identity.
14. Whether the extraneous offenses were in fact sufficiently similar to show identity was not
addressed by the Court of Appeals, and we do not address that question here. See Lane, 933 S.W.2d
at 519 ("an extraneous offense must be so similar to the offense charged that the offenses are marked
as the accused's handiwork").