**Affirmed and Memorandum Opinion filed August 8, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00487-CR

---

**REGAN ANTHONY ELLISON, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

---

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 94430-CR**

---

## MEMORANDUM OPINION

Appellant challenges his conviction for retaliation, arguing in three issues that the evidence is insufficient to support the conviction and that the trial court abused its discretion in the admission of certain evidence. For the reasons given below, we overrule each issue and affirm the trial court's judgment.

## BACKGROUND

Appellant was charged with making a retaliatory threat to kill a judge. He pleaded not guilty to that charge, and his case proceeded to a trial by jury.

During the trial, the prosecution produced evidence that appellant had contacted a law office about seeking representation in a child custody appeal. Appellant first spoke over the phone with the law office's solo practitioner. When that call ended abruptly, the solo practitioner opined that appellant was "deranged" and "a nut job," and she instructed her paralegal not to take any more calls from appellant. Nevertheless, the paralegal answered a call several minutes later from appellant, and during that call, appellant mentioned that he ought to kill, or that he would kill, a judge involved in a separate criminal proceeding.

Appellant did not testify in his own defense, but his counsel presented a defensive theory that focused in part on appellant's problems with mental health. There was testimony that appellant believed that the judge was a "shape shifter." There was also testimony that appellant had previously filed a complaint with the sheriff's office, in which appellant stated that he had gone to the judge's office to speak with a clerk, and that he was rudely confronted by a family law attorney who was falsely presenting himself as the judge. Based on such evidence, counsel argued that appellant was not guilty of the charged offense because appellant's statements were not about the judge himself, but about this third-party attorney whom appellant believed was impersonating the judge.

The jury rejected appellant's defensive theory, convicted him as charged, and assessed his punishment at two years' imprisonment, which the trial court suspended for a period of five years of community supervision.

# SUFFICIENCY OF THE EVIDENCE

In a sufficiency challenge, a reviewing court must determine whether a rational trier of fact could have found the essential elements of an offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The offense here was retaliation, and as charged in the indictment, the prosecution had the burden of proving the following essential elements: (1) that appellant intentionally or knowingly threatened to harm the judge by an unlawful act, and (2) that the threat was made in retaliation for or on account of the service or status of the judge as a public servant. *See* Tex. Penal Code § 36.06(a)(1)(A). When deciding whether the prosecution carried its burden of proving these two elements, we consider all of the evidence in the light most favorable to the verdict. *See Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006).

For the first element, the prosecution relied on the testimony of the paralegal, who explained that he received a phone call from appellant in a "very agitated" state, and when referring to the judge, appellant stated "either I really need to kill that guy or I'm going to kill that guy, something along those lines." This statement constituted a threat, even though the judge was not physically present when the statement was uttered. *See Doyle v. State*, 661 S.W.2d 726, 728 (Tex. Crim. App. 1983) ("The fact that the party threatened was not present when the threat was made is no defense.").

For the second element, the prosecution relied largely on the testimony of the threatened judge, who said that he placed appellant on deferred probation for a term of twenty-four months following a misdemeanor charge. The judge continued that appellant filed a self-represented motion for early termination of his deferred probation, which the judge denied without a hearing. After that ruling, appellant visited the judge's office and had a "tense" conversation with the judge's court

3

reporter, who was filling in for the judge's absent secretary. When the judge heard the court reporter's frustrations, the judge attempted to help appellant directly by accessing appellant's case file. The judge asked for the spelling of appellant's name twice, but appellant just answered with his name, not its spelling. The judge then said that he was in a hurry for a meeting and that he did "not have time to deal with stupid people today." The judge called for his bailiff to escort appellant out of the office.

The judge testified that there was no family law attorney present for this encounter, and that there would not be any reason for a family law attorney's presence either because the judge does not rule on family law cases.

After the encounter, appellant filed another self-represented motion for early termination. The judge testified that he had planned to rule on the motion in a live hearing, where he could explain to appellant directly that appellant was not eligible for his requested relief. But before the hearing date could arrive, appellant was arrested for making his threat, and the judge recused himself from appellant's criminal case.

Aside from the judge's testimony, the prosecution also relied on testimony from appellant's probation officer. She testified that she had a teleconference meeting with appellant after his first motion for early termination had been denied. During this meeting, appellant described the judge as "a fucking coward," and he instructed the probation officer to tell the judge "to suck my dick, lick my balls, and get his thumb out of his ass."

Based on all of this evidence, a reasonable factfinder could have concluded that appellant made a threat of unlawful harm against the judge, and that the threat was made in retaliation for the judge's rulings in appellant's criminal case, which occurred by virtue of the judge's service as a public servant.

Appellant responds that the evidence is insufficient because the paralegal—who was the only witness to hear the threatening statement—also testified that appellant believed that the family law attorney had been impersonating the judge. Thus, to the extent the prosecution was required to prove that appellant had threatened the judge in retaliation for his service as a public servant, appellant argues that his conviction must be reversed because the threatening statement was aimed at the family law attorney, rather than the judge.

But the paralegal testified that appellant specifically mentioned the judge when he made his threatening statement. Based on that testimony alone, the jury was free to believe that appellant made his threat against the judge and to disbelieve any contrary suggestion that the threat was made against the family law attorney. *See Edward v. State*, 635 S.W.3d 649, 656 (Tex. Crim. App. 2021) ("When faced with conflicts in the evidence, a reviewing court shall presume that the fact finder resolved those conflicts in favor of the verdict and defer to that determination.").

The jury could have reached that same conclusion from the circumstantial evidence. The judge testified that he had made an adverse ruling against appellant, from which a jury could reasonably infer retaliatory intent. The probation officer likewise testified that appellant had made offensive comments about the judge, which reflects the same retaliatory intent. Finally, the family law attorney testified that he had never even met appellant before. All of this evidence supports a finding that appellant's threat was directed at the judge, not the family law attorney.

Appellant argues next that the evidence is insufficient because the paralegal testified that he did not initially believe that appellant's threat of harm was credible. The paralegal explained that he had planned to tell the judge about the threat whenever he happened to see the judge, but that he reported the threat more quickly after speaking with other lawyers whom he encountered at the courthouse. Because

5

one of those lawyers happened to be opposing counsel in appellant's child custody case, appellant suggests that the report was somehow strategic.

To the extent that appellant argues that the paralegal's testimony should not be credited because it was motivated by strategy, his argument has no merit because we do not reevaluate the weight and credibility of witnesses in a sufficiency challenge. *See Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993) ("In conducting this review, we do not reevaluate the weight and credibility of the evidence, but act only to ensure that the jury reached a rational decision."). And to the extent that appellant argues that the evidence is insufficient because the paralegal did not believe appellant's threat of harm, his argument must likewise fail because the prosecution had no burden to prove that the threat of harm had been perceived as credible. Instead, the prosecution only had the burden of proving the essential elements that appellant intentionally or knowingly threatened the judge with an unlawful act in retaliation for the judge's service as a public servant. For all of the foregoing reasons, we conclude that the evidence was legally sufficient to support a finding of those essential elements beyond a reasonable doubt.

## ATTORNEY-CLIENT PRIVILEGE

In two separate hearings conducted outside the presence of the jury, appellant argued that the trial court should exclude the testimony of both the solo practitioner and the paralegal insofar as their testimony disclosed communications protected by privilege. The trial court overruled the objections. Appellant now challenges those rulings, which we review for an abuse of discretion. *See Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004).

An attorney-client privilege is established when a person consults with a lawyer with the view of obtaining professional legal services, even if the lawyer ultimately declines to represent the person at the end of the consultation. *See Mixon*

6

*v. State*, 224 S.W.3d 206, 206 (Tex. Crim. App. 2007). The privilege entitles the person to prevent the disclosure of confidential communications between the person and either the lawyer or the lawyer's representative, provided that those communications were made to facilitate the rendition of professional legal services. *See* Tex. R. Evid. 503(b)(1).

Assuming for the sake of argument that an attorney-client privilege was established here, the question is whether appellant was entitled to prevent the disclosure of any confidential communications he had with either the solo practitioner or the paralegal. A communication is confidential if it is "not intended to be disclosed to third persons other than those to whom disclosure is made to further the rendition of professional legal services to the client." *See* Tex. R. Evid. 503(a)(5)(A).

During the hearing conducted outside the presence of the jury, the solo practitioner mentioned that she perceived appellant as "a nut job" because he complained that there were "subsonic" noises interrupting his thought processes, and because he further believed that the judge in his criminal case was a "shape shifter." She also mentioned that appellant was mad at the mother of his child, though he never made any threats against anyone.

Defense counsel argued at the end of the hearing that the entirety of the solo practitioner's conversation should be excluded as confidential "given the length of the conversation," which was around forty minutes. But the length of a conversation, by itself, does not inform the critical question of whether the communication was made to further the rendition of professional legal services.

Defense counsel did not identify to the trial court any particular communications that should have been excluded. Appellant's brief in this court similarly fails to identify any communications that were subsequently admitted

despite being privileged. On this record, we cannot say that the trial court abused its discretion by overruling appellant's objection as to the solo practitioner.

During the separate hearing conducted outside the presence of the jury, the paralegal testified that appellant spoke with him in a "machine gun pattern," and appellant's rapid-fire statements were not always consistent. For example, appellant complained in one statement that the judge had become physical with him in chambers, but in another statement, the physical encounter occurred in the courtroom. Appellant also mentioned the family law attorney, whom he believed was on the bench impersonating the judge. But according to the paralegal, when appellant spoke of the judge specifically, he said, "I need to kill that guy or I really need to kill that guy or something to that extent."

At the end of the hearing, defense counsel re-urged his previous objection based on the attorney-client privilege. But unlike with his previous objection, counsel referred to a specific statement, which was the threat against the judge. Counsel argued that the statement was not admissible under the crime-fraud exception to the attorney-client privilege. In the alternative, counsel argued that the statement was inadmissible because there was uncertainty as to whether the statement was directed at the judge, as opposed to a family law attorney whom appellant believed was impersonating the judge.

The trial court overruled the objection without stating its reasoning. The trial court further explained that the uncertainty issue went to the weight of the evidence, not its admissibility.

Appellant challenges the trial court's ruling. Relying on *Henderson v. State*, 962 S.W.2d 544 (Tex. Crim. App. 1997), appellant argues that confidential statements are admissible under the crime-fraud exception only when the client seeks an attorney's advice or assistance in furtherance of a crime. *Id.* at 553 ("The

8

attorney's services must be sought or used to further the activity in question."). Because there was no evidence that he contacted the solo practitioner or the paralegal for their advice or assistance in harming or threatening to harm the judge, appellant argues that the crime-fraud exception does not apply, and that his privileged statements should have been excluded.

But *Henderson* also explains that the rules of ethics require an attorney to disclose a client's confidential communication that he is likely to commit a criminal or fraudulent act that is likely to result in death or substantial bodily harm. *Id.* at 554. Unlike the crime-fraud exception, the ethical rules do not require that the communication be made with an intent to use the attorney's services to further the criminal enterprise. *Id.* Indeed, communications expressing an intent to commit such crimes are outside the definition of the privilege altogether. *Id.* at 555 ("A client who informs his attorney that he or she intended to commit a future crime—but does not convey the information for the purpose of securing the attorney's services in furtherance of his plan—has arguably made a communication that is not for the purpose of facilitating the rendition of professional legal services. Hence, while such communications would fall outside the crime-fraud exception, they would also fall outside the definition of the privilege itself so that the privilege would present no bar to disclosure.").

The evidence here was that appellant made a communication that he intended to kill the judge. Regardless of whether the judge or some other person was the actual target, the communication was not privileged, and the trial court did not abuse its discretion by allowing its admission. *See Aviles v. State*, 165 S.W.3d 437, 439 (Tex. App.—Austin 2005, no pet.) (holding that the defendant's threat to kill the prosecutor was not protected by the attorney-client privilege).

## MOTIONS FOR EARLY TERMINATION

The trial court admitted copies of appellant's two motions for early termination, over an objection that the motions were more prejudicial than probative. Appellant now challenges those rulings, arguing that the motions are prejudicial because they reveal that his underlying misdemeanor charge was for making a terroristic threat.

Appellant's argument is not supported by the record. In each of the two motions, which were admitted as State's Exhibit Nos. 1 and 2, the name of the misdemeanor charge was completely redacted. Accordingly, appellant cannot show that the trial court abused its discretion in the admission of the challenged evidence.[1]

## CONCLUSION

The trial court's judgment is affirmed.


/s/    Tracy Christopher
Chief Justice


Panel consists of Chief Justice Christopher and Justices Spain and Poissant.
Do Not Publish – Tex. R. App. P. 47.2(b).

---

[1] The name of the misdemeanor charge was not redacted from State's Exhibit No. 5, an Order Deferring Adjudication, but that exhibit was admitted during the punishment phase of trial, and appellant has not made any appellate challenge to its admission.