# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00007-CR

**Dwayne McIntyre, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 54,664, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Dwayne McIntyre of aggravated assault and the court sentenced him to fifty years in prison. *See* Tex. Pen. Code Ann. 22.02 (West Supp. 2004-05). McIntyre raises two issues on appeal, that the trial court erred by admitting evidence of extraneous bad acts prior to McIntyre's testimony and that the trial court erred by failing to grant a mistrial after the State described McIntyre in closing argument as "one of the most irritating personalities on the face of the planet." We affirm the conviction.

**Background**

The charges against McIntyre arose out of a midnight altercation with Patrick Simmonds when McIntyre fled from Simmonds's home after slashing the tires on Simmonds's van for the second time in three nights. McIntyre and Simmonds's description of the fight differ in their

testimony. Simmonds testified that he heard some noise outside of his house and went out to investigate. He noticed that one of his tires was flat and saw a person walking away from the van. Simmonds testified that he followed that person in an effort to identify him. He followed the person down the street until they were separated by about a half a block. While he was running to catch up with the person, Simmonds twisted his ankle. He testified that the person then turned around and charged him with a metal pipe. Unable to run, Simmonds defended himself, and the two began to fight.

Simmonds testified that the person hit him in the back of the head with the pipe but that Simmonds was able to grab the pipe. At this point he recognized his attacker as McIntyre. As the two struggled over the pipe, McIntyre bit Simmonds in the chest. Although the details of the struggle are not entirely clear from the record, Simmonds apparently gained control of McIntyre because Simmonds testified that McIntyre offered to pay for the tires if Simmonds would let him go. Simmonds refused and told McIntyre that he was going to jail. McIntyre responded by letting go of the pipe, reaching into his pocket, and telling Simmonds, "I'm going to cut you." Simmonds testified that he put his hand down to defend against McIntyre and was cut by something. Simmonds then pushed McIntyre to the ground, and McIntyre ran off.

Simmonds returned home with the metal pipe, called the police, and received medical treatment. He had a wound on his left hand, a bite mark on his chest, a blunt injury to the back of his head, and welts on his left forearm and head. A paramedic who treated Simmonds testified that the blunt injury and welts were consistent with being hit with a metal pipe and that the wound on his hand was inflicted by a sharp object, not the metal pipe introduced into evidence.

2

Simmonds testified that he knew McIntyre as the ex-husband of his wife's friend, Jackie McIntyre. Simmonds had volunteered to supervise court ordered visitations between McIntyre and his children pursuant to the McIntyres' divorce proceeding. Over objection, Simmonds was permitted to testify on redirect examination that McIntyre had threatened Simmonds on several occasions during these visitations. He testified that McIntyre's threats were in the nature of "he'll hurt me he'll kill me, stay out of his business, stay out of his way." Simmonds testified that there was also a physical altercation during one of the visitations.

McIntyre testified in his own defense. McIntyre's account of the altercation differed substantially from Simmonds's description. McIntyre admitted slashing Simmonds's tires as a symbolic gesture but testified that he did not initiate the fight. He recounted that the much larger Simmonds pursued him and threatened to "kick [his] ass" for slashing his tires. McIntyre testified that Simmonds swung at him and the two fought. They struggled over the pipe and both were injured. McIntyre testified that the razor he used to slash the tires had fallen out of his pocket earlier and that he did not have a knife during the fight. McIntyre speculated that Simmonds's hand was cut by the edge of the pipe during the fight. McIntyre was cross-examined regarding his extensive criminal record and inconsistencies in his account of the fight. He also gave a rambling narrative relating details of his divorce.

On rebuttal, the State called McIntyre's ex-wife. Jackie McIntyre described her ex-husband's abusive behavior that included physical and sexual assault during their marriage. She described one incident in which McIntyre attempted to drown her in the bathtub and another occasion in which he put a gun to her head. Jackie McIntyre's sister-in-law, Phyllis Mitchell, also testified regarding McIntyre's abuse of his ex-wife. McIntyre did not object to this rebuttal evidence.

**Extraneous Bad Acts**

In his first issue, McIntyre contends that the trial court erred by admitting evidence that he threatened Simmonds during visitations with his children prior to this assault. He argues that the evidence was not admissible under rule 404(b) or, alternatively, that the probative value of the evidence was substantially outweighed by its prejudicial nature. *See* Tex. R. Evid. 403, 404(b). We review a trial court's decision to admit evidence under an abuse of discretion standard. *Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004).

Evidence of other crimes, wrongs, or acts is not admissible to prove a person's bad character in order to show action in conformity therewith. Tex. R. Evid. 404(b); *Feldman v. State*, 71 S.W.3d 738, 754 (Tex. Crim. App. 2002). However, such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b); *Feldman*, 71 S.W.3d at 754. Even if a trial court decides that evidence is admissible under rule 404(b), it may nevertheless exclude that evidence if it determines that the probative value of the extraneous act evidence is substantially outweighed by unfair prejudice. Tex. R. Evid. 404(b); *Feldman*, 71 S.W.3d at 754.

Here, McIntyre's threats to hurt or kill Simmonds were admissible to establish intent. The court of criminal appeals has explained that evidence of a defendant's prior threat to a person that they are charged with later harming is generally admissible to show the relationship between the defendant and the victim, the relevant facts surrounding the crime, and the state of mind of the defendant. *See Sattiewhite v. State*, 786 S.W.2d 271, 284 (Tex. Crim. App. 1989). In *Sattiewhite*, the court of criminal appeals affirmed a trial court's decision to admit evidence that the defendant had previously threatened to kill his ex-girlfriend in the weeks proceeding her murder in order to

refute a defense of sudden passion. *Id*. Similarly, the evidence of McIntyre's threats to Simmonds demonstrated that McIntyre was not acting in self defense when he beat Simmonds with a metal pipe.

The court of criminal appeals's opinion in *Sattiewhite* also addresses McIntyre's argument that the evidence of the prior threats could not be admitted because he had not yet raised his self defense argument. In *Sattiewhite*, the defense presented no evidence and, therefore, could only have raised the issue of sudden passion through the cross-examination of the State's witnesses. *See id*. at 276. It is clear from the record that McIntyre also raised the issue of self defense through his cross-examination of Simmonds. He emphasized the difference in size between Simmonds and McIntyre, elicited that Simmonds was angry as he was running after McIntyre, and questioned why Simmonds did not immediately call the police. He also questioned Simmonds's testimony that he could not flee McIntyre's attack, noting that Simmonds never reported his twisted ankle to medical personnel. We conclude that this cross-examination raised the issue of self defense, making the evidence of McIntyre's prior threats to Simmonds relevant under 404(b). *See id*. at 284.

We next turn to the question of whether the probative value of this evidence was substantially outweighed by unfair prejudice to McIntyre. *See* Tex. R. Evid. 403; *Feldman*, 71 S.W.3d at 754. The evidence complained of is limited. At the hearing on the admission of the threats, Simmonds provided a detailed account of the threats, which included a physical altercation in front of McIntyre's children and an incident in which McIntyre pretended a shaving kit concealed in his jacket was a weapon. By contrast, the testimony actually elicited in front of the jury was brief and general in nature. Although McIntyre contends that he was harmed because he was compelled to testify in response to the admission of the threats, a recorded defense conference placed in the

5

record by McIntyre belies his argument. The conference reflects that McIntyre had decided to testify, against the advice of counsel, prior to the commencement of the trial.

Accordingly, we hold that the evidence that McIntyre threatened Simmonds on several occasions prior to the assault was admissible to show intent and that its probative value was not substantially outweighed by unfair prejudice to McIntyre. We overrule McIntyre's first issue.

**Improper Argument**

In his second issue, McIntyre contends that the trial court erred by failing to grant a mistrial in response to a remark by the prosecutor in closing argument that McIntyre was "one of the most irritating personalities on the face of the planet." McIntyre objected to the comment, and the trial court sustained the objection. The trial court instructed the jury to disregard the comment but refused to grant a requested mistrial.

The denial of a motion for a mistrial is reviewed under an abuse of discretion standard. *Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999); *Bryant v. State*, 25 S.W.3d 924, 926 (Tex. App.—Austin 2000, pet. denied). Impermissible jury argument will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). "The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id*. An instruction to disregard will ordinarily cure error associated with improper argument. *Id*.; *Bryant*, 25 S.W.3d at 926.

6

In light of the record as a whole, we do not find that the prosecutor's isolated characterization of McIntyre's personality as "irritating" was extreme or manifestly improper or calculated to deprive McIntyre of a fair trial. *See Wesbrook*, 29 S.W.3d at 115. The remark did not comment on McIntyre's rights, appeal to racial bias, or inject new facts. *See id*. Because the trial court did not abuse its discretion in refusing to grant a mistrial, we overrule McIntyre's second issue.

### *Pro se* filing

McIntyre has submitted several documents *pro se*. An appellant is not entitled to hybrid representation. *Patrick v. State*, 906 S.W.2d 481, 498 (Tex. Crim. App. 1995) (refusing to consider appellant's *pro se* supplemental brief in addition to brief submitted by counsel). Nevertheless, in the interest of justice, we have examined McIntyre's *pro se* filings and find that they raise no issues of merit.

### Conclusion

Having overruled all of McIntyre's issues, we affirm the judgment of conviction.

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: March 24, 2005

Do Not Publish

7