COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-286-CR

 

 

JEFFREY O'NEAL DODSON A/K/A                                          APPELLANT

JEFFERY ONEIL DODSON

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction








Appellant
Jeffrey O=Neal Dodson a/k/a Jeffery Oneil
Dodson appeals his conviction for capital murder.  In one point, Dodson argues that the trial
court abused its discretion by admitting extraneous offense evidence during the
guilt‑innocence phase of trial in violation of rules 403 and 404(b).  See Tex. R. Evid. 403, 404(b).  We will affirm.

II.  Factual and Procedural Background

On June
11, 2007, at approximately 4:00 p.m., Dodson; his brother, Theodis Dodson; and
their cousin, Fredrick Hughs, went to the D&S Food Mart in Bedford,
Texas.  Dodson and Theodis went into the
store, while Hughs stayed outside in Dodson=s
Suburban.  Gaurab Rajbanshi, the store=s clerk,
was working that day.  While in the
store, Dodson and Theodis got a beer out of the cooler, waited for the only
customer in the store to leave, and then went to the cash register to pay.  At that point, Dodson pulled out a gun and
shot Rajbanshi, who immediately fell to the ground.  One of the two men then jumped over the
counter and began stomping on the cash register to get it to open.  Rajbanshi died at the scene.








Shortly
after the robbery and murder, the Bedford police, who had released the
videotape surveillance of the robbery to the news media, received a tip that
Hughs and Theodis were the individuals depicted on the surveillance tape.  As a result of the tip, Hughs was arrested.  Hughs told the police that Dodson and Theodis
went into the D&S Food Mart, that Dodson shot Rajbanshi, and that Hughs
waited outside the store in Dodson=s
Suburban.  Hughs eventually led police to
the gun, a .380 caliber semiautomatic handgun, which was in a field close to
the apartment where Dodson was staying after the robbery.  Additionally, the police located ammunition
approximately fifty feet from the apartment.

Testing
confirmed that the gun found near the apartment was the same gun used in the
robbery and murder.  Ronald Singer, the
crime laboratory director for the Tarrant County Medical Examiner=s
Office, testified that the shell casing found at the scene and the bullet
fragment taken from Rajbanshi=s head
during the autopsy were fired from the gun found in the field at the apartment.

Dodson
was indicted for capital murder.  He
pleaded not guilty to the charge, and the case went to trial.  After finding Dodson guilty of the offense,
the jury sentenced him to life imprisonment without the possibility of
parole.  This appeal followed.

III.  Extraneous Offense Evidence

In
Dodson=s only
point, he argues that the trial court abused its discretion by admitting at the
guilt-innocence phase of trial extraneous offense evidence of a robbery that
occurred on June 4, 2007, at a convenience store in Watauga.  See Tex. R. Evid. 403, 404(b).

 

 








A.     Standard of Review

When
reviewing a trial court=s decision to admit extraneous
offense evidence under rule 404(b), or over a rule 403 objection, an appellate
court applies an abuse‑of‑discretion standard.  See De La Paz v. State, 279 S.W.3d
336, 343 (Tex. Crim. App. 2009).  A trial
court abuses its discretion only when its decision lies outside Athe >zone of
reasonable disagreement.=@  Id. at 343B44.

B.     Rule 404(b)

The
general rule is that the defendant is to be tried only for the offense charged,
not for any other crimes or for being a criminal generally.  Segundo v. State, 270 S.W.3d 79, 87
(Tex. Crim. App. 2008); Crank v. State, 761 S.W.2d 328, 341 (Tex. Crim.
App. 1988).  Evidence of extraneous acts
of misconduct may be admissible if (1) the uncharged act is relevant to a
material issue in the case and (2) the probative value of that evidence is
not significantly outweighed by its prejudicial effect.  Segundo, 270 S.W.3d at 87.








AEvidence
of other crimes, wrongs or acts@ may not
be admitted during the guilt‑innocence phase of trial Ato prove
the character of a person in order to show action in conformity therewith.@  Tex. R. Evid. 404(b); Marc v. State,
166 S.W.3d 767, 775 (Tex. App.CFort
Worth 2005, pet. ref=d).  Such evidence of extraneous offenses may be
admitted to prove motive, opportunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident. 
Tex. R. Evid. 404(b).  The court
of criminal appeals has explained, A>Rule
404(b) is a rule of inclusion rather than exclusion.=  The rule excludes only that evidence that is
offered (or will be used) solely for the purpose of proving bad character and
hence conduct in conformity with that bad character.@  De La Paz, 279 S.W.3d at 343
(footnotes omitted).  The State, as the
proponent of extraneous offense evidence, bears the burden of showing
admissibility.  Russell v. State,
113 S.W.3d 530, 535 (Tex. App.CFort
Worth 2003, pet. ref=d); Rankin v. State, 974
S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. on reh=g).  Extraneous offense evidence may also be
admissible to rebut a defensive theory.  Moses
v. State, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

The
State asserts that the extraneous offense evidence was relevant to establish
Dodson=s
identity because Dodson repeatedly raised the issue of his identity as one of
the robbers during the trial.








One of
the main rationales for admitting extraneous offense evidence is to prove the
identity of the offender.  Segundo,
270 S.W.3d at 88; Castillo v. State, 739 S.W.2d 280, 289 (Tex. Crim.
App. 1987).  An extraneous offense may be
admissible to show identity only if identity is at issue in the case. Page
v. State, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004).  The trial judge has considerable latitude in
determining that identity is, in fact, disputed.  Id. 
Identity may be placed in dispute by cross‑examination as well
as by affirmative evidence offered by the defense.  Id.

The
theory behind admitting extraneous offense evidence to prove identity is
usually that the pattern and characteristics of the charged crime and the
extraneous offense evidence are so distinctively similar that they constitute a
A>signature.=@  Segundo, 270 S.W.3d at 88; Beets v.
State, 767 S.W.2d 711, 740B41 (Tex.
Crim. App. 1988) (op. on reh=g).  No rigid rules dictate what constitutes
sufficient similarities; rather, the common characteristics may be proximity in
time and place, mode of commission of the crimes, the person=s dress,
or any other elements which mark both crimes as having been committed by the
same person.  Segundo, 270 S.W.3d
at 88; Taylor v. State, 920 S.W.2d 319, 322 (Tex. Crim. App. 1996).  However, if the similarities are A>generic,=@ i.e.,
they are typical to this type of crime, they will not constitute a A>signature=@
crime.  Segundo, 270 S.W.3d at 88
(footnote omitted); Curtis v. State, 89 S.W.3d 163, 172B74 (Tex.
App.CFort
Worth 2002, pet. ref=d).








Here,
Dodson concedes in his brief that the only issue at trial was whether he was
the killer depicted on the surveillance tape. 
Additionally, Dodson placed identity in issue during his
cross-examination of Dr. Gary Sisler, deputy medical examiner for Tarrant
County.  During his cross-examination,
Dodson questioned Dr. Sisler on whether an individual who had suffered a
ruptured intestine and undergone surgery, which was the case for Dodson, would
be able to jump over a counter a few weeks after the operation.  Because identity was placed in issue, we must
compare the circumstances of the charged offense and the extraneous offense to
determine if they were sufficiently similar to make the extraneous offense
admissible to prove identity.  See
Segundo, 270 S.W.3d at 88.

On June
4, 2007, at approximately 10:00 p.m., Kamal Luitel was working as a cashier at
the One Stop Pantry in Watauga, Texas, when he saw two men, whom he later
identified as Dodson and Theodis, walk into the store.[2]  When Dodson and Theodis brought their beers
to the cash register, Luitel asked them if they were going to pay separately or
together, and they replied that they were going to pay separately.








Luitel
stated that one of the men then gave him a dollar to pay for his beer.  Luitel testified that when he went to open
the cash register, one of the men jumped over the counter and hit him in the
head with a gun.  Luitel suffered a
laceration to the head, which required five stitches, and he suffered pain in
two fingers, which was the result of him shielding his face from being hit with
the gun.  Dodson contends that the
similarities between the two crimes are Aso
random and illogical that it strains credulity to label these offenses as >signature
offenses.=@

A
comparison of the charged offense and extraneous offense, however, shows a high
degree of similarity.  Both offenses,
which were committed a week apart, occurred in convenience stores when only one
person was working, and no other customers were in the store.  In both cases, Dodson and Theodis, who were
wearing hats, pretended to purchase beer so that the clerk would open the cash
register.  Additionally, after attacking
the clerk with a gun, one of the men would jump over the counter to get money
out of the register.

Further,
the same gun was used during the commission of both offenses.  Ballistics tests confirmed that the gun that
was found in the field fired the bullet that killed Rajbanshi.  When testing that same gun, the magazine was
swabbed, and after testing, it was confirmed that it had Luitel=s DNA on
it.  Additionally, testing of Dodson=s tennis
shoes showed a DNA profile on the right shoelace that matched Luitel=s DNA
profile.








We hold
that the trial court did not abuse its discretion by admitting the extraneous
offense for the permissible purpose of proving Dodson=s
identity.  See Tex. R. Evid.
404(b).  We must now turn to a rule 403
balancing test.  See Tex. R. Evid.
403.

C.    Rule
403

Although
relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.  Id.








Once a
rule 403 objection is made, the trial court must weigh the probative value of
the evidence to determine if it is substantially outweighed by its potential
for unfair prejudice.  Santellan v.
State, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).  A rule 403 balancing test includes the
following factors:  (1) the inherent
probative force of the proffered item of evidence along with (2) the
proponent=s need for that evidence against
(3) any tendency of the evidence to suggest decision on an improper basis,
(4) any tendency of the evidence to confuse or distract the jury from the
main issues, (5) any tendency of the evidence to be given undue weight by
a jury that has not been equipped to evaluate the probative force of the
evidence, and (6) the likelihood that presentation of the evidence will
consume an inordinate amount of time or merely repeat evidence already
admitted.  Gigliobianco v. State,
210 S.W.3d 637, 641B42 & n.8 (Tex. Crim. App.
2006).[3]

1.     Probative Value and Need

The
trial court could have concluded that the extraneous offense evidence was
highly probative to show Dodson=s
identity as one of the perpetrators in the D&S Food Mart robbery and murder
of Rajbanshi.  Ballistics tests confirmed
that the same gun was used in the One Stop Pantry robbery and the D&S Food
Mart robbery and murder, and Luitel=s DNA
was found on Dodson=s shoelace and the gun magazine.  This evidence aids the identification of
Dodson in the D&S Food Mart robbery. 
Additionally, the record supports a finding that the State had a
significant need for the extraneous offense evidence.

2.     Unfair Prejudice








The
trial court could have reasonably determined that the extraneous offense
evidence did not have a tendency to suggest a decision on an improper
basis.  Although the extraneous evidence
had the potential to evoke an emotional response in the jury, it is clear from
the record that the State introduced the evidence to explain Dodson=s
identity as one of the assailants. 
Additionally, the trial court instructed the jury that it could only
consider the extraneous offense evidence Ain
determining the proof of intent, preparation, knowledge, identity, or existence
of conspirator relationship between Theodis and Jeffrey Dodson, if any, in
connection with the crime alleged in the indictment in this case, and for no
other purpose.@

3.     Confusion of the Issues

Here,
the testimony of the State=s
witnesses about the D&S Food Mart robbery and murder of Rajbanshi trial
lasted three days.  The State called
nineteen witnesses, and only four of them testified about the One Stop Pantry
robbery.  Dodson argues that the State Adevoted
a considerable amount of time and effort in developing evidence of the extraneous
offense,@ citing
the fact that the testimony occupied the entire last day of the State=s
case-in-chief.  However, the record
reflects that the State=s presentation of the extraneous
offense evidence consumed only approximately two hours forty-nine minutes,
including the trial court=s jury instruction and Dodson=s cross-examination
of the witnesses, of the three-day trial.








Additionally,
the trial court reasonably could have concluded that the extraneous offense
evidence assisted the jury in understanding Dodson=s identity
as one of the robbers in the D&S Food Mart robbery.  Accordingly, the trial court could have
reasonably concluded that the extraneous offense evidence did not have a
tendency to confuse or distract the jury from the main issues in the case.

4.     Misleading the Jury

The
State=s
evidence regarding the D&S Food Mart robbery and murder was more detailed
than the extraneous offense evidence. 
Additionally, the D&S Food Mart robbery was the focus of the State=s
case.  Although the State presented
evidence of the extraneous offense, it did not suggest that the evidence could
be used to convict Dodson for the offense of capital murder.  The extraneous offense evidence was presented
in a fashion to prove Dodson=s
participation in the D&S Food Mart robbery and murder.  Accordingly, the trial court could have
reasonably concluded that the extraneous offense evidence did not have a
tendency to be given undue weight by a jury that was not equipped to evaluate
the probative force of the evidence.

5.     Undue Delay and Needless Presentation of Cumulative Evidence

 








As
stated above, although the testimony of the State=s
witnesses lasted three days, less than a total of three hours was spent by the
prosecutor presenting evidence, the trial court instructing the jury, and the
defense cross-examining the witnesses concerning the extraneous offense.  As such, the trial court could have
reasonably concluded that the presentation of the extraneous offense evidence
would not consume an inordinate amount of time. 
Additionally, the trial court could have determined that the extraneous
offense evidence was not cumulative of other evidence presented at trial.

After
balancing the rule 403 factors, we conclude that the trial court could have
reasonably determined that the probative value of the extraneous offense
evidence was not substantially outweighed by the countervailing factors
specified in the rule.  See Tex.
R. Evid. 403.

We hold
that the trial court did not abuse its discretion by admitting the extraneous
offense evidence.  See Tex. R.
Evid. 403, 404(b).  Accordingly, we
overrule Dodson=s sole point.

IV.  Conclusion

Having
overruled Dodson=s sole point, we affirm the
trial court=s judgment.

 

BILL MEIER

JUSTICE

 

PANEL:  MCCOY and MEIER, JJ.;
and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  July 22, 2010











[1]See Tex. R. App. P. 47.4.





[2]At trial, Luitel
testified that when shown the photo lineups, he told the police Amaybe this guy, maybe
this person, but maybe -- I=m not sure.@  However,
Sergeant Steve Hickman, with the Watauga Police Department, testified that
Luitel identified both Dodson and Theodis out of photo lineups, within ten
seconds of viewing them, as the people who robbed him.





[3]Although Dodson, the
State, and the trial court rely on the rule 403 factors set out in Montgomery
v. State, 810 S.W.2d 372 (Tex. Crim. App. 1990) (op. on reh=g), we recognize that the
court of criminal appeals expanded on the factors in Gigliobianco.  210 S.W.3d at 641B42.  Accordingly, our rule 403 analysis will
involve the Gigliobianco factors.