

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-286-CR

JEFFREY O'NEAL DODSON A/K/A                                    APPELLANT
JEFFERY ONEIL DODSON

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  INTRODUCTION

------------

[1]*See* Tex. R. App. P. 47.4.

Appellant Jeffrey O'Neal Dodson a/k/a Jeffery Oneil Dodson appeals his conviction for capital murder. In one point, Dodson argues that the trial court abused its discretion by admitting extraneous offense evidence during the guilt-innocence phase of trial in violation of rules 403 and 404(b). *See* Tex. R. Evid. 403, 404(b). We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On June 11, 2007, at approximately 4:00 p.m., Dodson; his brother, Theodis Dodson; and their cousin, Fredrick Hughs, went to the D&S Food Mart in Bedford, Texas. Dodson and Theodis went into the store, while Hughs stayed outside in Dodson's Suburban. Gaurab Rajbanshi, the store's clerk, was working that day. While in the store, Dodson and Theodis got a beer out of the cooler, waited for the only customer in the store to leave, and then went to the cash register to pay. At that point, Dodson pulled out a gun and shot Rajbanshi, who immediately fell to the ground. One of the two men then jumped over the counter and began stomping on the cash register to get it to open. Rajbanshi died at the scene.

Shortly after the robbery and murder, the Bedford police, who had released the videotape surveillance of the robbery to the news media, received a tip that Hughs and Theodis were the individuals depicted on the surveillance tape. As a result of the tip, Hughs was arrested. Hughs told the police that

2

Dodson and Theodis went into the D&S Food Mart, that Dodson shot Rajbanshi, and that Hughs waited outside the store in Dodson's Suburban. Hughs eventually led police to the gun, a .380 caliber semiautomatic handgun, which was in a field close to the apartment where Dodson was staying after the robbery. Additionally, the police located ammunition approximately fifty feet from the apartment.

Testing confirmed that the gun found near the apartment was the same gun used in the robbery and murder. Ronald Singer, the crime laboratory director for the Tarrant County Medical Examiner's Office, testified that the shell casing found at the scene and the bullet fragment taken from Rajbanshi's head during the autopsy were fired from the gun found in the field at the apartment.

Dodson was indicted for capital murder. He pleaded not guilty to the charge, and the case went to trial. After finding Dodson guilty of the offense, the jury sentenced him to life imprisonment without the possibility of parole. This appeal followed.

### III. EXTRANEOUS OFFENSE EVIDENCE

In Dodson's only point, he argues that the trial court abused its discretion by admitting at the guilt-innocence phase of trial extraneous offense evidence

3

of a robbery that occurred on June 4, 2007, at a convenience store in Watauga. *See* Tex. R. Evid. 403, 404(b).

### A. Standard of Review

When reviewing a trial court's decision to admit extraneous offense evidence under rule 404(b), or over a rule 403 objection, an appellate court applies an abuse-of-discretion standard. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). A trial court abuses its discretion only when its decision lies outside "the 'zone of reasonable disagreement.'" *Id.* at 343–44.

### B. Rule 404(b)

The general rule is that the defendant is to be tried only for the offense charged, not for any other crimes or for being a criminal generally. *Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008); *Crank v. State*, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988). Evidence of extraneous acts of misconduct may be admissible if (1) the uncharged act is relevant to a material issue in the case and (2) the probative value of that evidence is not significantly outweighed by its prejudicial effect. *Segundo*, 270 S.W.3d at 87.

4

"Evidence of other crimes, wrongs or acts" may not be admitted during the guilt-innocence phase of trial "to prove the character of a person in order to show action in conformity therewith." Tex. R. Evid. 404(b); *Marc v. State*, 166 S.W.3d 767, 775 (Tex. App.—Fort Worth 2005, pet. ref'd). Such evidence of extraneous offenses may be admitted to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b). The court of criminal appeals has explained, "'Rule 404(b) is a rule of inclusion rather than exclusion.' The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *De La Paz*, 279 S.W.3d at 343 (footnotes omitted). The State, as the proponent of extraneous offense evidence, bears the burden of showing admissibility. *Russell v. State*, 113 S.W.3d 530, 535 (Tex. App.—Fort Worth 2003, pet. ref'd); *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. on reh'g). Extraneous offense evidence may also be admissible to rebut a defensive theory. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

The State asserts that the extraneous offense evidence was relevant to establish Dodson's identity because Dodson repeatedly raised the issue of his identity as one of the robbers during the trial.

5

One of the main rationales for admitting extraneous offense evidence is to prove the identity of the offender. *Segundo*, 270 S.W.3d at 88; *Castillo v. State*, 739 S.W.2d 280, 289 (Tex. Crim. App. 1987). An extraneous offense may be admissible to show identity only if identity is at issue in the case. *Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004). The trial judge has considerable latitude in determining that identity is, in fact, disputed. *Id.* Identity may be placed in dispute by cross-examination as well as by affirmative evidence offered by the defense. *Id.*

The theory behind admitting extraneous offense evidence to prove identity is usually that the pattern and characteristics of the charged crime and the extraneous offense evidence are so distinctively similar that they constitute a "'signature.'" *Segundo*, 270 S.W.3d at 88; *Beets v. State*, 767 S.W.2d 711, 740–41 (Tex. Crim. App. 1988) (op. on reh'g). No rigid rules dictate what constitutes sufficient similarities; rather, the common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person. *Segundo*, 270 S.W.3d at 88; *Taylor v. State*, 920 S.W.2d 319, 322 (Tex. Crim. App. 1996). However, if the similarities are "'generic,'" i.e., they are typical to this type of crime, they will not constitute a "'signature'" crime. *Segundo*, 270 S.W.3d at 88 (footnote

6

omitted); *Curtis v. State*, 89 S.W.3d 163, 172–74 (Tex. App.—Fort Worth 2002, pet. ref'd).

Here, Dodson concedes in his brief that the only issue at trial was whether he was the killer depicted on the surveillance tape. Additionally, Dodson placed identity in issue during his cross-examination of Dr. Gary Sisler, deputy medical examiner for Tarrant County. During his cross-examination, Dodson questioned Dr. Sisler on whether an individual who had suffered a ruptured intestine and undergone surgery, which was the case for Dodson, would be able to jump over a counter a few weeks after the operation. Because identity was placed in issue, we must compare the circumstances of the charged offense and the extraneous offense to determine if they were sufficiently similar to make the extraneous offense admissible to prove identity. *See Segundo*, 270 S.W.3d at 88.

On June 4, 2007, at approximately 10:00 p.m., Kamal Luitel was working as a cashier at the One Stop Pantry in Watauga, Texas, when he saw two men, whom he later identified as Dodson and Theodis, walk into the store.[2] When Dodson and Theodis brought their beers to the cash register,

---

[2]At trial, Luitel testified that when shown the photo lineups, he told the police "maybe this guy, maybe this person, but maybe -- I'm not sure." However, Sergeant Steve Hickman, with the Watauga Police Department, testified that Luitel identified both Dodson and Theodis out of photo lineups,

Luitel asked them if they were going to pay separately or together, and they replied that they were going to pay separately.

within ten seconds of viewing them, as the people who robbed him.

Luitel stated that one of the men then gave him a dollar to pay for his beer. Luitel testified that when he went to open the cash register, one of the men jumped over the counter and hit him in the head with a gun. Luitel suffered a laceration to the head, which required five stitches, and he suffered pain in two fingers, which was the result of him shielding his face from being hit with the gun. Dodson contends that the similarities between the two crimes are "so random and illogical that it strains credulity to label these offenses as 'signature offenses.'"

A comparison of the charged offense and extraneous offense, however, shows a high degree of similarity. Both offenses, which were committed a week apart, occurred in convenience stores when only one person was working, and no other customers were in the store. In both cases, Dodson and Theodis, who were wearing hats, pretended to purchase beer so that the clerk would open the cash register. Additionally, after attacking the clerk with a gun, one of the men would jump over the counter to get money out of the register.

Further, the same gun was used during the commission of both offenses. Ballistics tests confirmed that the gun that was found in the field fired the bullet that killed Rajbanshi. When testing that same gun, the magazine was swabbed, and after testing, it was confirmed that it had Luitel's DNA on it.

9

Additionally, testing of Dodson's tennis shoes showed a DNA profile on the right shoelace that matched Luitel's DNA profile.

We hold that the trial court did not abuse its discretion by admitting the extraneous offense for the permissible purpose of proving Dodson's identity. *See* Tex. R. Evid. 404(b). We must now turn to a rule 403 balancing test. *See* Tex. R. Evid. 403.

**C.  Rule 403**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. *Id.*

Once a rule 403 objection is made, the trial court must weigh the probative value of the evidence to determine if it is substantially outweighed by its potential for unfair prejudice. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). A rule 403 balancing test includes the following factors: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been

10

equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 & n.8 (Tex. Crim. App. 2006).[3]

### 1. Probative Value and Need

The trial court could have concluded that the extraneous offense evidence was highly probative to show Dodson's identity as one of the perpetrators in the D&S Food Mart robbery and murder of Rajbanshi. Ballistics tests confirmed that the same gun was used in the One Stop Pantry robbery and the D&S Food Mart robbery and murder, and Luitel's DNA was found on Dodson's shoelace and the gun magazine. This evidence aids the identification of Dodson in the D&S Food Mart robbery. Additionally, the record supports a finding that the State had a significant need for the extraneous offense evidence.

### 2. Unfair Prejudice

---

[3]Although Dodson, the State, and the trial court rely on the rule 403 factors set out in *Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1990) (op. on reh'g), we recognize that the court of criminal appeals expanded on the factors in *Gigliobianco*. 210 S.W.3d at 641–42. Accordingly, our rule 403 analysis will involve the *Gigliobianco* factors.

The trial court could have reasonably determined that the extraneous offense evidence did not have a tendency to suggest a decision on an improper basis. Although the extraneous evidence had the potential to evoke an emotional response in the jury, it is clear from the record that the State introduced the evidence to explain Dodson's identity as one of the assailants. Additionally, the trial court instructed the jury that it could only consider the extraneous offense evidence "in determining the proof of intent, preparation, knowledge, identity, or existence of conspirator relationship between Theodis and Jeffrey Dodson, if any, in connection with the crime alleged in the indictment in this case, and for no other purpose."

### 3. Confusion of the Issues

Here, the testimony of the State's witnesses about the D&S Food Mart robbery and murder of Rajbanshi trial lasted three days. The State called nineteen witnesses, and only four of them testified about the One Stop Pantry robbery. Dodson argues that the State "devoted a considerable amount of time and effort in developing evidence of the extraneous offense," citing the fact that the testimony occupied the entire last day of the State's case-in-chief. However, the record reflects that the State's presentation of the extraneous offense evidence consumed only approximately two hours forty-nine minutes,

12

including the trial court's jury instruction and Dodson's cross-examination of the witnesses, of the three-day trial.

Additionally, the trial court reasonably could have concluded that the extraneous offense evidence assisted the jury in understanding Dodson's identity as one of the robbers in the D&S Food Mart robbery. Accordingly, the trial court could have reasonably concluded that the extraneous offense evidence did not have a tendency to confuse or distract the jury from the main issues in the case.

### 4. Misleading the Jury

The State's evidence regarding the D&S Food Mart robbery and murder was more detailed than the extraneous offense evidence. Additionally, the D&S Food Mart robbery was the focus of the State's case. Although the State presented evidence of the extraneous offense, it did not suggest that the evidence could be used to convict Dodson for the offense of capital murder. The extraneous offense evidence was presented in a fashion to prove Dodson's participation in the D&S Food Mart robbery and murder. Accordingly, the trial court could have reasonably concluded that the extraneous offense evidence did not have a tendency to be given undue weight by a jury that was not equipped to evaluate the probative force of the evidence.

13

### 5. Undue Delay and Needless Presentation of Cumulative Evidence

As stated above, although the testimony of the State's witnesses lasted three days, less than a total of three hours was spent by the prosecutor presenting evidence, the trial court instructing the jury, and the defense cross-examining the witnesses concerning the extraneous offense. As such, the trial court could have reasonably concluded that the presentation of the extraneous offense evidence would not consume an inordinate amount of time. Additionally, the trial court could have determined that the extraneous offense evidence was not cumulative of other evidence presented at trial.

After balancing the rule 403 factors, we conclude that the trial court could have reasonably determined that the probative value of the extraneous offense evidence was not substantially outweighed by the countervailing factors specified in the rule. *See* Tex. R. Evid. 403.

We hold that the trial court did not abuse its discretion by admitting the extraneous offense evidence. *See* Tex. R. Evid. 403, 404(b). Accordingly, we overrule Dodson's sole point.

## IV. CONCLUSION

Having overruled Dodson's sole point, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL:  MCCOY and MEIER, JJ.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:   July 22, 2010