**Opinion issued August 29, 2013**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-11-01018-CR

—————————————

**AARON VILLAR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1276565**

---

## MEMORANDUM OPINION

A jury found Aaron Villar guilty of aggravated robbery with a deadly weapon[1] and assessed his punishment at sixty years' confinement and a $10,000 fine. In his sole appellate issue, Villar contends the trial court committed

---

[1]    *See* TEX. PENAL CODE ANN. § 29.03 (West 2011).

reversible error by admitting an unadjudicated extraneous offense during the guilt/innocence phase of the trial. We affirm.

## BACKGROUND

The complainants in this case are elderly brothers Joe and John Amorelli. The Amorellis, octogenarians both, were at their shared residence on August 22, 2010, when a man later identified as appellant rang the doorbell. Joe answered the door and appellant asked for someone who did not live at the home. As Joe began to step out to assist appellant, appellant burst through the screen door, knocked Joe down, threatened him with a silver-plated gun and demanded money. Hearing a commotion, John went to assist his brother, but appellant pushed him down as well and demanded money. Appellant was accompanied by an unidentified, gun-wielding accomplice.

The Amorellis testified that appellant was in their house for about ten minutes and ran off with some cash and a small air compressor. John also testified that appellant and his accomplice had backed their car into the Amorellis' driveway "where they could take out quick." When police arrived, the Amorellis described appellant as a Hispanic male with shoulder-length, curly black hair, medium build, wearing a black t-shirt. Harris County Sheriff's Deputy Wallace Wyatt investigated the robbery with his partner, Deputy Lisa McCool, and testified that the Amorellis brothers both later identified appellant from a photo array.

Throughout trial, appellant's defensive counsel sought to discredit the identification of appellant by casting doubt on the Amorellis' description of appellant at the time of the robbery and their ability to identify appellant solely from a photo array, as compared to a live lineup.[2] Following appellant's cross-examination of Deputy Wyatt, the State sought to introduce evidence of an extraneous offense to prove identity, arguing that the defense had opened the door through its cross-examination of the Amorellis and Deputy Wyatt. While defense counsel acknowledged that the main issue was identity, he argued that the admission of the extraneous offense was unfairly prejudicial.

The trial court overruled appellant's objection but before the State presented testimony of the extraneous offense, the trial court instructed the jury that it could only consider the other offense if it believed beyond a reasonable doubt that appellant committed the offense, and then only for purposes of determining "motive, opportunity, intent, preparation, plan, knowledge, identity . . . in

---

[2] The line of questioning is summarized in appellant's closing argument. Appellant argues

> The issue here is Mr. Amorelli, John Amorelli, and Joe Amorelli. They made their decision from a photograph. They did not remember at the scene. And that can happen to anybody. A lot of people don't remember what happens when a gun is put in their face or something like that.

> But these gentlemen were elderly. They couldn't remember things. That's normal because they're in their eighties.

connection with the offense . . . alleged against him in the indictment and for no other purposes." The jury charge contained a similar limiting instruction.

Called to testify about the extraneous offense were: Deputy Wyatt; Deputy Lisa McCool; Charles Reece, a fingerprint expert; and Mitchell Castro, the complainant in the extraneous offense case. Castro testified that nineteen minutes prior to the Amorelli robbery, he reported an armed robbery at his residence, approximately three miles from the Amorelli residence. As he stepped out onto his porch, a black car backed up into his driveway and appellant, the passenger of the vehicle, approached Castro and inquired about someone named Xavier. When the driver of the vehicle joined appellant, they both pulled out guns and ordered Castro into the house. Castro testified that appellant's gun was "shiny, like, chrome." Once inside, appellant ordered Castro to lie on the floor, taking cash from his wallet and yelling for more cash, jewelry, and a gun. On cross-examination, Castro testified that appellant was in his house for only a couple of minutes.

Castro described the perpetrator to the 9-1-1 dispatcher and the responding officers as between 5'9" and 5'10" with long, curly hair wearing a black t-shirt. Investigators recovered four fingerprints from the scene—three of which belonged to appellant. After noticing that the general description Castro provided matched appellant, Deputy Lisa McCool compiled a photo array which included appellant's

4

photo and showed it to Castro. At trial, Castro and Deputy McCool testified that Castro identified appellant as his assailant from the array.

## DISCUSSION

Appellant contends the trial court erred in admitting evidence of the extraneous offense because identity was not at issue, the two offenses were not sufficiently similar to the complaining witnesses' description to establish a signature or modus operandi, and the probative value of the evidence is substantially outweighed by its potential for prejudice.

### A. *Standard of Review*

We review a trial court's admission of extraneous offense evidence under an abuse of discretion standard. *Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004); *Jabari v. State*, 273 S.W.3d 745, 751 (Tex. App.—Houston [1st Dist.] 2008, no pet.). As long as the trial court's ruling is within the zone of reasonable disagreement, the court does not abuse its discretion, and we shall uphold its ruling. *Jabari*, 273 S.W.3d at 751; *Thomas v. State*, 126 S.W.3d 138, 143 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

### B. *Admissibility under Rule 404(b)*

Comporting with the general rule that a defendant is not to be tried for a collateral crime or for being a criminal generally, Rule 404(b) prohibits the introduction of extraneous offenses at trial to prove a defendant's character or to

show that the defendant acted in conformity with that character. TEX. R. EVID. 404(b); *Page*, 137 S.W.3d at 78; *Jabari*, 273 S.W.3d at 751. Extraneous offenses may be admissible, however, when relevant to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404(b); *Jabari*, 273 S.W.3d at 751.

### 1. Identity at Issue

An extraneous offense may be admissible to prove identity only if the identity of the perpetrator is at issue in the case. *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006); *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996). Identity may be placed at issue or in dispute through cross-examination of the identifying witness. *Thomas*, 126 S.W.3d at 144. This occurs when the identifying witness has been impeached about (1) a material detail of the identification; (2) the conditions surrounding the charged offense and the witness' identification of the defendant in that situation; or (3) an earlier misidentification of the defendant. *Id.*; *see also Robbins v. State*, 88 S.W.3d 256, 261 (Tex. Crim. App. 2002) (vigorous cross-examination can, by itself, place in issue a non-conformity purpose under Rule 404(b)); *Hudson v. State*, 112 S.W.3d 794, 801 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("In raising a defensive theory, a defendant opens the door for the State to offer rebuttal testimony concerning an extraneous offense if the extraneous offense has characteristics common with the

6

offense for which the defendant is being tried."). When assessing the strength of impeachment, the question is not whether the "impeachment was not particularly damaging or effective in light of the evidence presented," but rather "whether impeachment occurred that raised the issue of identity." *Page*, 137 S.W.3d at 79. In this regard, the trial judge has considerable latitude in determining that identity is, in fact, disputed and that the extraneous offenses are relevant to the issue of identity. *See id.* at 78; *Segundo v. State*, 270 S.W.3d 79, 86 (Tex. Crim. App. 2008).

In the instant case, defense counsel expressly acknowledged that "this case is an identity case. That is the main issue in this case." In line with defense counsel's framing of the case, appellant went to great lengths during trial to test whether the Amorellis' identification of appellant was tainted in some way. Appellant tried to establish that the Amorellis did not get a good look at the robbers because they were fearful of being shot. Appellant also called into question the Amorellis' ability to confidently pick appellant from a photo lineup when they could not give a more specific description of the suspect at the time of the incident.[3] Finally, in closing arguments, appellant reinforced these issues and highlighted the Amorellis' ages to raise doubt as to their credibility. *See Segundo*, 270 S.W.3d at 86 & n.11 (finding trial judge did not abuse her discretion in finding

---

[3] John Amorelli conceded that his description of one of the perpetrators could fit "about 300 million people."

7

that defendant raised issue of identity through his cross-examination, when issue of identity was primary focus of defense's closing arguments.) Whether the challenge was to their capacity to observe (they were mistaken) or to their truthfulness (they were lying), or both, the defense counsel's questions implied that the Amorellis' identifications of appellant were not trustworthy. *See Page*, 137 S.W.3d at 78. Therefore, we conclude that the trial court did not abuse its discretion in finding that appellant raised the issue of identity through his cross-examination of the Amorellis.[4] *See Siqueirios v. State*, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985) (en banc) (evidence of similar extraneous offense admissible because, inter alia, defense strategy was aimed at undermining witness' identification of defendant).

## 2. Sufficiently Similar

Raising the issue of identity "does not automatically render evidence of an extraneous offense admissible." *Jabari*, 273 S.W.3d at 751 (citing *Page*, 213 S.W.3d at 336). "When the extraneous offense is introduced to prove identity by

---

[4] Appellant contends that it was an abuse of discretion to find that identity was at issue based on the State's *initial* argument at trial that the extraneous offense was necessary to show that the deputies had a reason to put appellant in a photo lineup. This argument is meritless. First, the State argued at trial that identity was at issue based on appellant's cross-examination of the identifying witnesses, the Amorellis. Second, the trial judge has considerable latitude in determining that identity is in dispute and that the extraneous offenses are relevant to the issue of identity, regardless of counsel's arguments. *See Page v. State*, 137 S.W.3d 75, 79 (Tex. Crim. App. 2004).

comparing common characteristics, it must be so similar to the charged offense that the offenses illustrate the defendant's 'distinctive and idiosyncratic manner of committing criminal acts.'" *Page*, 213 S.W.3d at 336 (quoting *Martin v. State*, 173 S.W.3d 463, 468 (Tex. Crim. App. 2008)). Extraneous offense evidence is admissible to prove identity "when the common characteristics of each offense are so unusual as to act as the defendant's 'signature.'" *Page*, 213 S.W.3d at 336 (quoting *Taylor v. State*, 920 S.W.2d 319, 322 (Tex. Crim. App. 1996)); *see also Johnson v. State*, 68 S.W.3d 644, 650–51 (Tex. Crim. App. 2002) ("[T]o be admissible to show identity, an extraneous offense must be so similar to the charged offense as to mark the offenses as the defendant's handiwork."). The "signature" must be apparent from a comparison of the circumstances in both cases. *Page*, 213 S.W.3d at 336. The probative value of the extraneous offense evidence is outweighed by its prejudicial effect unless there is a high degree of similarity to the charged offense. *Jabari*, 273 S.W.3d at 752 (citing *Bishop v. State*, 869 S.W.2d 342, 346 (Tex. Crim. App. 1993)). In reviewing the trial court's determination, we consider the specific characteristics of the offenses and the time interval between them. *Id.* (citing *Thomas*, 126 S.W.3d at 144). "Sufficient similarity may be shown by proximity in time and place or by a common mode of committing the offenses." *Id.* (citing *Lane*, 933 S.W.2d at 519).

The record reveals that the two robberies occurred within twenty minutes of

each other and had the following similarities: (1) they occurred within three miles from each other; (2) they occurred at residences occupied by older complainants; (3) both were aggravated robberies involving an unidentified accomplice; (4) complainants from both robberies described one of the robbers as having curly, long black hair and wearing a black t-shirt; (5) complainants from both robberies identified appellant as one of the robbers; (6) the robbers backed their vehicle into the complainant's driveway; (7) the robbers asked for an unknown individual upon making contact with the complainant; (8) the robbers forced their way into the complainant's home carrying a silver/chrome gun; and (9) the complainants were pushed or forced to lie on the floor while the robbers searched for money or for other items to steal.

In *Harvey v. State*, the Fourteenth Court of Appeals held that where an accused used the same mode of commission in the charged offense and the extraneous offense, committed both offenses in the same residential area, and committed both offenses within an hour of each other, there was sufficient similarity between the charged offense and the extraneous offense for the trial court to admit the extraneous offense evidence to prove identity. 3 S.W.3d 170, 175 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Based on the identified similarities, and consistent with *Harvey*, we hold that the facts and circumstances of the extraneous offense are sufficiently similar to the charged offense that the

trial court's decision to admit it in order to prove identity falls within the zone of reasonable disagreement.

## C. Admissibility under Rule 403

Even when the admission of extraneous offense evidence is permissible under Rule 404(b), we must still determine whether the probative value of the offense is substantially outweighed by the danger of unfair prejudice under Rule 403. TEX. R. EVID. 403; *see Jabari*, 273 S.W.3d at 752; *Blackwell v. State*, 193 S.W.3d 1, 15 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). We consider the following factors when conducting a Rule 403 analysis: (1) the strength of the extraneous evidence to make a fact of consequence more or less probable (i.e., relevance); (2) the potential of the extraneous offense to impress the jury in some irrational but indelible way; (3) the time during trial that the State needs to develop evidence of the extraneous offense; and (4) the State's need for the extraneous offense evidence. *Blackwell*, 193 S.W.3d at 9 (citing *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002)). We uphold the trial court's ruling on a Rule 403 balancing test, whether explicit or implied, if it is within the zone of reasonable disagreement. *Jabari*, 273 S.W.3d at 753.

Considering the first factor, given the similarities between the two offenses, we agree with the trial court that the Castro robbery was highly relevant to the issue of identity. The age of the complainants and their inability to provide a more

11

specific description of the perpetrator, coupled with doubt raised by identification of the perpetrator via a photo array and the suggestion of impropriety by the police, gave the State reason to develop extraneous offense evidence as to the perpetrator of the robbery. The proximity of the Castro robbery and the similarity in the mode in which it was carried out as compared to the Amorelli robbery make the extraneous offense relevant to the issue of identity. *See Jabari*, 273 S.W.3d at 753 (finding that modus operandi of extraneous offenses which matched charged crime made identification of suspect more probable where identifying witness was impeached on issue of identity). Because this extraneous offense evidence makes appellant's identity as the perpetrator of the Amorelli robbery more probable, this factor "weighs strongly in favor of admissibility." *Blackwell*, 193 S.W.3d at 15.

The second factor requires that we examine the extraneous evidence "for its potential to impress the jury in some irrational but indelible way," such as character conformity. *Id.* An impermissible inference of character conformity, however, can be minimized by the use of a limiting instruction. *Jabari*, 273 S.W.3d at 753; *Blackwell*, 193 S.W.3d at 15 ("The trial court's instructions to the jury are a factor to consider in determining whether the jury considered the extraneous-offense evidence improperly, i.e., as character conformity evidence, or properly, as evidence to rebut a defensive theory or some other permissible reason under rule 404(b)."). Here, the trial court instructed the jury that if it believed

12

beyond a reasonable doubt that Appellant committed the Castro robbery, it could consider the Castro-robbery evidence for purposes of determining "motive, opportunity, intent, preparation, plan, knowledge, identity . . . in connection with the offense . . . alleged against him in the indictment and for no other purposes." The trial court included a substantially similar instruction in the written charge. These instructions informed the jury that it could consider the Castro-robbery evidence only for the purposes of establishing identity, and not for character-conforming purposes. *See Blackwell*, 193 S.W.3d at 17 ("The jury here was therefore adequately apprised that it could rely on the extraneous offense evidence solely for other purposes than character-conformity evidence."); *see also Jabari*, 273 S.W.3d at 753 ("Here, the trial court instructed the jurors to limit their consideration of the extraneous offense evidence."). This factor weighs in favor of admissibility.

Next, we consider the amount of time taken at trial to develop evidence of the extraneous offense. This factor focuses on the time needed "to develop the evidence, during which the jury [is] distracted from consideration of the indicted offense." *State v. Mechler*, 153 S.W.3d 435, 441 (Tex. Crim. App. 2005). Because the concern is the extent to which the jury is distracted from considering the charged offense, we consider the time needed to develop all evidence relating to the extraneous offense (e.g., cross-examination, redirect examination) and any

13

rebuttal testimony offered by the defense in response to the extraneous-offense evidence. *See Isenhower v. State*, 261 S.W.3d 168, 179 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (considering direct, cross, and redirect examinations); *Lopez v. State*, 200 S.W.3d 246, 253 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (considering testimony from extraneous-offense complainant, her father, and defendant); *Blackwell*, 193 S.W.3d at 18 (considering testimony from extraneous-offense complainants and two police officers). We do not, however, include hearings conducted outside of the jury's presence or jury argument. *See Dennis v. State*, 178 S.W.3d 172, 181 n.2 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

Here, the time needed to develop the extraneous-offense evidence amounted to about thirty-six percent of the testimony elicited during the guilt-innocence phase of trial and consumed a full day of the two-day guilt-innocence phase. This factor weighs in favor of exclusion. *See Newton v. State*, 301 S.W.3d 315, 321 (Tex. App.—Waco 2009, pet ref'd) (holding factor weighed in favor of exclusion when evidence of extraneous offense amounted to approximately twenty-seven percent of testimony at trial); *Russell v. State*, 113 S.W.3d 530, 546 (Tex. App.—Fort Worth 2003, pet. ref'd) (holding same when evidence of extraneous offense amounted to approximately thirty percent of trial testimony).

The final factor examines the State's need for the evidence. Here, there was no physical evidence linking appellant to the Amorelli robbery. There were no

14

other witnesses besides Joe and John Amorelli. With Joe's and John's testimony impeached by the vigorous cross-examination by the defense, the extraneous-offense evidence was significant to the State's case to establish identity. This factor favors admissibility of the extraneous evidence.

When we consider all four factors together, only the third factor (i.e., the time spent developing the extraneous-offense evidence), weighs against admissibility. Accordingly, we hold that the trial court did not abuse its discretion in admitting evidence of the Castro robbery pursuant to Rule 403. *See Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) ("[Rule 403] envisions exclusion of evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'") (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)).

## CONCLUSION

We affirm the trial court's judgment.

Jim Sharp
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

15