

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00076-CR

Paul **MENA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CR4184
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: September 25, 2024

AFFIRMED

In four issues, appellant Paul Mena appeals his continuous sexual abuse of a child conviction. *See* TEX. PENAL CODE ANN. § 21.02. He raises two evidentiary issues, and he also contends his Confrontation Clause rights were violated and the cumulative effect of the errors impacted his ability to have a fair trial. We affirm.

## BACKGROUND

Mena was charged with the continuous sexual abuse of his two youngest daughters, Y.G. and M.G.[1] *See id.* Mena has six children, three girls and three boys. The biological mother of the children left them with Mena and moved away from the area. While the children were still minors, Mena met and married J.A., and they took care of the children.

One day when Y.G., M.G., and J.A. were in the kitchen, Y.G. made her outcry to J.A. that Mena had been sexually abusing her. M.G. immediately left the kitchen and went to her closet in her bedroom. When J.A. checked on M.G., M.G. made her outcry to J.A. that Mena also sexually abused her. After taking the girls to the hospital and reporting the sexual abuse to the authorities, J.A. moved from Mena's house taking the five youngest children with her. The oldest daughter, O.G., no longer lived with Mena and J.A. at the time of the outcries.

Following the move, Mena's and the biological mother's parental rights were terminated to the five youngest children. J.A. then adopted the five children.

During Mena's trial, his youngest daughters, Y.G. and M.G., testified about the sexual abuse. J.A. testified as the outcry witness. The two investigating officers and the sexual assault nurse examiner also testified. The jury found Mena guilty of the continuous sexual abuse of the children, and the trial court sentenced Mena to life in prison. Mena appeals.

## ADMISSIBILITY OF EVIDENCE

In his first and second issues, Mena argues the trial court erred in admitting certain extraneous evidence, namely that testimony regarding the reason his oldest daughter, O.G., no

---

[1] To protect the identity of the victims and the members of their family except Mena, we use pseudonyms for their names. *See* TEX. CONST. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

longer lived with him and that his and the children's biological mother's parental rights were terminated.

*A. Standard of Review and Applicable Law*

"[A] trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011); *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Under this standard, we do not reverse a trial court's decision unless it lies outside the zone of reasonable disagreement. *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016). "Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial [court] gave the wrong reason for [its] ruling." *De La Paz*, 279 S.W.3d at 344.

"Evidence of a crime, wrong, or act other than the offense charged is not admissible to prove that the defendant acted in conformity with his character but may be admissible for other purposes." *Inthalangsy v. State*, 634 S.W.3d 749, 756 (Tex. Crim. App. 2021); *see* TEX. R. EVID. 404(b). For instance, a party may introduce evidence of other crimes, wrongs, or acts if such evidence logically serves to make more or less probable (1) an elemental fact, (2) an evidentiary fact that inferentially leads to an elemental fact, or (3) defensive evidence that undermines an elemental fact. *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005); *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004) (recognizing "extraneous-offense evidence may be admissible when a defendant raises an affirmative defense or a defensive issue that negates one of the elements of the crime"). Evidence of extraneous offenses has been held admissible "[t]o refute a defensive theory raised by the accused." *Albrecht v. State*, 486 S.W.2d 97, 101 (Tex. Crim. App. 1972).

Rule 404(b) states that such extraneous-offense evidence may be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity,

absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). "This list is illustrative, rather than exhaustive, and the extraneous-offense evidence may be admissible when a defendant raises a defensive issue that negates one of the elements of the offense." *Martin*, 173 S.W.3d at 466.

Voir dire, opening statements, and cross-examination can all be vehicles for raising a defensive theory and may open the door to extraneous-offense evidence. *Dabney*, 492 S.W.3d at 318 (holding a defensive theory raised in the defense's voir dire and opening statement opened the door to extraneous-offense evidence); *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (holding a defensive theory raised in the defense's opening statement opened the door to extraneous-offense evidence); *Page v. State*, 137 S.W.3d 75, 78 n.11 (Tex. Crim. App. 2004) (recognizing that cross-examination may open the door to extraneous-offense evidence). In fact, "vigorous cross-examination [by the defense] can, by itself, place in issue a non-conformity purpose under [r]ule 404(b)." *Page*, 137 S.W.3d at 78 n.11 (citing *Robbins v. State*, 88 S.W.3d 256, 261 (Tex. Crim. App. 2002)).

### B. Evidence Regarding O.G. Being Kicked out of Mena's House

In his first issue, Mena argues the trial court erred by admitting extraneous evidence that Mena "violently" kicked his oldest daughter, O.G., out of his house although she was not named in the indictment.

Specifically, during the State's direct examination of M.G., after M.G stated she knew Mena also sexually abused O.G., the State asked M.G. whether O.G. had ever lived with the family, to which M.G. responded, "[y]es[,]" that "[i]t was a long time ago." Before the State asked M.G. another question, M.G. added, "[O.G.] got kicked out." The following then transpired:

State:          And you said she got kicked out. What do you mean?

M.G.:           I just remember it was nighttime and they were fighting and he just threw her downstairs and --"

| | |
|---|---|
| Defense: | Your Honor, I'm going to object as relevance and prejudicial more than probative. |
| State: | I think this goes towards what we discussed at the bench. |
| The court: | Overruled. |
| State: | Paul Mena threw [O.G.] down the stairs and kicked her out? |
| M.G. | Yes. |
| State: | Okay. So she didn't leave on her own? |
| M.G. | No. |

1. Preservation

To preserve a challenge on evidentiary matters, the record must show that the party made a timely and specific objection on the record, unless the specific grounds are apparent from the context, and the party obtained an adverse ruling on that objection. TEX. R. APP. P. 33.1(a); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021); *see also* TEX. R. EVID. 103(a) (providing that parties must preserve claim of error in admissibility of evidence with timely objection). "An objection is timely if it is made as soon as the ground for the objection becomes apparent, i.e., as soon as the defense knows or should know that an error has occurred." *Grant v. State*, 345 S.W.3d 509, 512 (Tex. App.—Waco 2011, pet. ref'd) (citing *Neal v. State*, 256 S.W.3d 264, 279 (Tex. Crim. App. 2008)). "Generally, this occurs when the evidence is admitted." *Id.* (citing *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995)). "If a party fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived." *Id.* (citing *Dinkins*, 894 S.W.2d at 355).

Prior to Mena's objection, M.G. had already testified that O.G. had been kicked out of the house. Thus, at the time the State asked M.G. to clarify what she meant by O.G. being kicked out

of the house, Mena should have objected to the line of questioning, rather than wait until after M.G. answered the State's question explaining that Mena and O.G. were fighting when Mena threw O.G. down the stairs and kicked her out of the house. Defense counsel delayed his objection, without any explanation for the delay, until after M.G. answered the State's clarification question. Thus, Mena failed to timely object and preserve issue one. *See Montelongo*, 623 S.W.3d at 822; *see also* TEX. R. APP. P. 33.1(a).

2. Analysis

Nevertheless, even assuming Mena timely objected to the State's question that elicited the complained of testimony, the trial court did not abuse its discretion in allowing the brief testimony of M.G. during the State's direct examination.

Initially, during Mena's opening statement, defense counsel explained the complaining witnesses, Y.G. and M.G., were just repeating the same allegations and that no other evidence existed. Defense counsel added that Mena's oldest daughter, O.G., was "not here to complain about anything." Also, during cross-examination, defense counsel asked Y.G. if she knew whether her oldest sister, O.G., was aware of the allegations she and M.G. had made against Mena, to which Y.G. stated, "[n]o." Defense counsel then asked Y.G. whether at the time the allegations were made, she shared a room with her sisters, O.G. and M.G., and Y.G. responded that O.G. had "left the house." The following then transpired:

| Defense: | . . . And [O.G.] left because she didn't approve—tell me if I'm right or wrong—[O.G.] left because she didn't approve of the allegations that you and [M.G.] were making against [Mena], correct? |
|---|---|
| Y.G.: | No. |
| Defense: | But she went with her bio mom? |
| Y.G. | Yes, sir. |

Immediately following Y.G.'s testimony and just prior to M.G. testifying, a bench conference occurred wherein the State claimed defense counsel opened the door regarding Mena kicking O.G. out of his house. The State based its argument on defense counsel's opening statement asserting O.G. was not at the trial "to complain about anything." The State argued defense counsel's statement insinuated O.G. moved out of Mena's house because she believed Y.G. and M.G. fabricated the sexual abuse allegations. The State added that this is incorrect as M.G. had identified an incident with Mena when O.G. was in the same room and that O.G. left Mena's house involuntarily after Mena "violently" kicked her out. Defense counsel claimed he did not open the door because he carefully crafted his statement, and it was true that O.G. was not at the trial making a complaint. The State further argued defense counsel was presenting a false impression for the jury that O.G. moved out of the house because she did not believe her sisters' allegations, insinuating Y.G. and M.G. were lying. The trial court responded by stating, "I think [defense counsel] kind of did open the door a little. Limit it."

Mena's defense strategy focused on Y.G.'s and M.G.'s credibility. Part of the defense relied on O.G. not making her own sexual abuse allegations against Mena and not being at the trial—i.e., O.G. was not present at trial to complain about anything—implying O.G. did not believe the allegations against Mena and thus voluntarily moved away. Both defense counsel's opening statement and his cross-examination of Y.G. supported this defense, implying that Y.G. and M.G. had fabricated the allegations.

The trial court did not abuse its discretion by allowing the State to rebut Mena's defensive strategy that Y.G. and M.G. must be lying, as evidenced by O.G. moving away because she did not believe their sexual abuse allegations. *See Martin*, 173 S.W.3d at 466; *Johnston*, 145 S.W.3d at 219. Extraneous evidence can be admitted to refute a defensive theory, especially one supported by the defense's creation of a false impression absent the admission of the extraneous evidence.

*See Martin*, 173 S.W.3d at 466. Therefore, the trial court did not abuse its discretion in admitting the extraneous evidence. *See Devoe*, 354 S.W.3d at 469.

### C. Evidence Regarding Mena's and Biological Mother's Termination of Parental Rights

In his second issue, Mena contends the trial court erred by admitting extraneous evidence about his and the biological mother's termination of their parental rights to the five youngest children.

During its opening statement, the State referred to the termination of Mena's parental rights based in part on the allegations in the criminal case. Mena objected to the statement claiming it was not part of the evidence and was prejudicial. The trial court sustained the objection, and upon Mena's request, instructed the jury to disregard the State's statement. However, the State continued its opening statement and without objection, stated that before Mena's and the biological mother's parental rights were terminated, the children were abandoned and left with Mena who began sexually abusing M.G. and Y.G. Soon thereafter, the State again, without objection, mentioned Mena's parental rights to the children had been terminated. Furthermore, during defense counsel's opening statement, counsel commented on the termination of Mena's parental rights, stating the termination was not at issue in the case.

Next, during the State's redirect examination of M.G., she testified without objection that her biological mother had gotten back together with Mena after J.A. left him, the Texas Department of Family and Protective Services ("the Department") removed the five younger children from her biological parents' care, and her biological mother's parental rights were terminated. Not until the State asked M.G. if her biological mother's parental rights were terminated because her biological mother did not have M.G.'s "best interests in mind" did defense counsel object. Defense counsel objected on the basis the question "misstate[d] the evidence, state[d] facts not in evidence, [and] it call[ed] for an expert opinion, legal opinion." The trial court sustained Mena's objection.

Moreover, J.A. testified that following Y.G.'s and M.G.'s outcries, she and the children moved from Mena's house, the Department became involved, and eventually Mena's and the biological mother's parental rights were terminated. Defense counsel lodged no objection to this line of questioning until the State asked J.A. whether there was a hearing to determine if the parents' parental rights should be terminated. Defense counsel objected on the basis the question sought "extraneous and irrelevant" evidence. The trial court overruled the objection. Defense counsel again objected when the State asked whether J.A. knew the results of that proceeding, arguing it was "hearsay[.]" The trial court again overruled defense counsel's objection. Following defense counsel's objections, J.A. affirmed the parents' parental rights were terminated and testified she subsequently adopted the children.

First, the trial court sustained Mena's objections during the State's opening statement and to the State's question inquiring about the basis for the Department's termination of Mena's and the biological mother's parental rights. Defense counsel asked for an instruction to disregard the State's comment during its opening statement, and the trial court gave the requested instruction. Defense counsel did not request an instruction when he objected to the State asking M.G. whether her biological mother's rights were terminated because her biological mother did not have M.G.'s best interest in mind. In sustaining the objections and giving the requested instruction, when requested, the trial court afforded Mena the relief he requested. *See Acosta v. State*, 411 S.W.3d 76, 95 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (("When an appellant has been given all the relief he requested, 'there is nothing to complain of on appeal.'") (quoting *Cook v. State*, 858 S.W.2d 467, 473 (Tex.Crim.App.1993))).

Second, the trial court overruled Mena's objections to the State's questions to J.A. about whether the Department conducted a hearing to terminate Mena's parental rights and whether she knew the outcome of the trial. "An error [if any] in the admission of evidence is cured where the

same evidence comes in elsewhere without objection." *Newland v. State*, 363 S.W.3d 205, 210 (Tex. App.—Waco 2011, pet. ref'd) (alterations in original) (quoting *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004)); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule ... is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."). During numerous occasions, including during Mena's defense counsel's opening statement, evidence that Mena's and the biological mother's parental rights to the children had been terminated was admitted without objection.

Therefore, the trial court did not abuse its discretion in admitting evidence that Mena's parental rights to his children were terminated. *See Devoe*, 354 S.W.3d at 469.

We overrule Mena's first and second issues.

### CONFRONTATION CLAUSE

In his third issue, Mena contends the trial court violated his Confrontation Clause and due process rights when it sustained the State's relevancy objections to Mena's cross-examination of J.A. regarding her initial attraction to Mena and the number of times she had been married. *See* U.S. CONST. amends. VI, IVX. Defense counsel claimed the State's questions to J.A. focused on Mena's poor behavior, and the cross-examination questions focused on what Mena "was doing well."

Now, on appeal, Mena contends the trial court violated his Confrontation Clause and due process rights when it excluded the testimony. Mena did not make those objections at trial. To preserve a complaint for appellate review, a party must make a timely, specific objection and obtain a ruling from the trial court. *State v. Lerma*, 639 S.W.3d 63, 66 (Tex. Crim. App. 2021); *see also* TEX. R. APP. P. 33.1(a). The point of error on appeal must comport with the objection made at trial. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). If a party fails to properly

object to constitutional errors at trial, these errors can be forfeited. *Clark*, 365 S.W.3d at 339; *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) (applying waiver of confrontation and due process rights because defendant failed to object). Because Mena did not assert that the exclusion of J.A.'s testimony implicated his Confrontation Clause and due process rights, the trial court had no opportunity to correct error, if any, and Mena has not preserved this complaint for our review. *See Reyna v. State*, 168 S.W.3d 173, 179–80 (Tex. Crim. App. 2005). Even if Mena preserved his issue, the trial court did not abuse its discretion in precluding Mena's questions about J.A.'s initial attraction to him or how many times J.A. has been married. *See Henley v. State*, 493 S.W.3d 77, 83–84 (Tex. Crim. App. 2016) ("[T]he trial court judge has the discretion to exclude irrelevant evidence."); *see also* TEX. R. EVID. 401, 402.

We overrule Mena's third issue.

### CUMULATIVE ERROR

In his fourth issue, Mena argues that the trial court's cumulative error requires reversal even if each issue individually does not require such a reversal. Having concluded that Mena has not preserved his complaints for our review or that there is no error, the cumulative error doctrine does not apply. *See Buntion v. State*, 482 S.W.3d 58, 79 (Tex. Crim. App. 2016); *Lewis v. State*, 693 S.W.3d 453, 473 (Tex. App.—Houston [14th Dist.] Aug. 1, 2023, pet. ref'd) ("The cumulative-error doctrine does not apply unless the appellant preserved his complaints in the trial court and demonstrates on appeal that the trial court erred.").

Accordingly, we overrule Mena's fourth issue.

### CONCLUSION

Having overruled Mena's appellate issues, we affirm the trial court's final judgment.

Irene Rios, Justice

Do not publish